Argued October 16; affirmed November 10; rehearing denied
December 15, 1931

## STIGER *v.* PERSYN ET AL.

### (4 P. (2d) 629)

*McDannell Brown,* of Portland (C. M. Idleman, of
Portland, on the brief), for appellants.

*L. M. Burnett,* of Vancouver, Wash., and *W. S.
U'Ren,* of Portland (Bates & Burnett, of Vancouver,
Wash., on the brief), for respondents.

BELT, J. This suit was commenced to foreclose a note and mortgage for $1,250, dated July 24, 1929, executed by defendants, Thomas Persyn and Ada Persyn, his wife, in favor of defendant K. R. Blair, to secure the payment of a real estate broker's commission alleged to have been earned in bringing about an exchange of real property owned by the Persyns for a six-acre tract upon which was erected a gasoline station, barbecue stand, and tourists's auto cabins, belonging to the defendants, R. S. Thompson and his wife, A. Ruth Thompson.

The defendants Persyn answered alleging that the note was satisfied and paid in full by the acceptance by R. S. Thompson, as agent for W. J. Blair, of a note of $1,000 executed by C. Crawls, and that, prior to the time the note of $1,250 was assigned by Blair to the plaintiff, the latter had knowledge that it had been thus paid. As a further and separate answer and cross-complaint, the Persyns alleged that, on the 18th day of July, 1929, they were induced to enter into a written contract to exchange their properties in Multnomah and Washington counties for the automobile park and gasoline station, by reason of certain fraudulent representations made in pursuance of a conspiracy between the plaintiff, R. B. Stiger, and the defendants, R. S. Thompson, A. Ruth Thompson, J. D. Pearce, K. R. Blair, and W. J. Blair, and that the note upon which the foreclosure suit is based arose out of this fraudulent transaction. The cross-complainants charged that they were defrauded in that it was represented to them that R. S. Thompson was the owner of the property for which they traded and that it had a value of $35,000; that for some months prior to the exchange of properties the gasoline station and automobile park had been

bringing in a net income of from $350 to $400 per month and that the Persyns "could and would make a net income of $350 per month out of said property and in addition thereto would receive $65 per month out of the barbecue station on said property." It is asserted that these representations were false in that the property had no greater value than $5,000 and that the net income from sale of gasoline and rental of cabins, for many months prior to the exchange of the properties, had not exceeded an average of $80 per month and that no greater net income had been derived by the Persyns since they took possession of the property on the 1st day of August, 1929. It is further alleged that, pursuant to the conspiracy of the above named defendants to defraud the Persyns, when the latter went to inspect the automobile park and cabins, neighbors and employees of the defendants were caused to go into the auto cabins and to park their cars in the garages thereof in order to mislead them into believing that said neighbors and employees were paying customers, whereas in truth and in fact "there were only one or two paying customers" at the time this inspection was made. The defendants Persyn seek to rescind their contract for exchange of properties and ask that the conveyances made pursuant thereto on July 24, 1929, be set aside and held for naught.

The trial court, without making any findings of fact, decreed that plaintiff's suit for foreclosure of the mortgage be dismissed and that the cross-complaint of the defendants Persyn be also dismissed. Defendants Persyn appeal.

■ We are of the opinion that the charge of fraud has not been sustained. There is no substantial evidence to support the allegation that the plaintiff and defend-

ants, R. S. Thompson, A. Ruth Thompson, J. D. Pearce, K. R. Blair and W. J. Blair, entered into any conspiracy to defraud Persyn and his wife in the exchange of properties. The day before entering into the contract the appellants twice inspected the property and, on one occasion, took with them Kenyon Bourne, a real estate broker, for the purpose of having him value the property. They were dealing at arm's length and there was no fiduciary relation between them and those with whom they were contracting. Under such circumstances, fraud can not be based upon representations as to value: *Castleman v. Stryker et al.*, 107 Or. 48 (213 P. 436).

■ Persyn and his wife were experienced in real estate transactions and it is highly improbable that they relied upon the judgment of any of the defendants as to value. Indeed, Mrs. Persyn testified that when Blair "called up and insisted that we see the place in the evening, we said we did not think it was worth the money and it was not as he represented." It may be true that they made an improvident bargain, but it is not within the province of courts to grant relief from mere errors in judgment.

■ The charge of fraud is predicated principally upon the alleged representations made by one Stewart who was in charge of the property when the Persyns inspected it. Stewart was holding under a lease. He was not an agent of Thompson. Hence any statement made by him would not be binding upon the latter.

The exchange was brought about largely through the activities of the defendant, K. R. Blair, an agent of the Columbia Investment Company, a corporation engaged in the real estate business at Vancouver, Washington. Mrs. Persyn testified: "It was on what

Stewart told us that we were influenced. And Thompson and Mr. Blair corroborated Mr. Stewart's statement that it was a money maker, and the only thing that was wrong with it was the lack of cabins.''

■ The Persyns said that three days after they took possession of the property they knew ''that we had been robbed''; yet about a month later they conveyed the property acquired from Thompson to the defendants J. D. Wyatt and his wife, Florence Wyatt. In other words, they affirmed the contract which they now ask this court to disaffirm. It is true that they claim that the instrument purporting on its face to be a deed was merely a mortgage to secure the loan of $500 but, be that as it may, the act was nevertheless one of affirmance of the contract.

■ When the deeds were delivered pursuant to the contracts for exchange of the properties, the greater part of the property deeded by the Persyns was conveyed to defendant J. D. Pearce, a sister of R. S. Thompson. The record title now stands in her name. Yet she was never served, nor did she make any appearance in this suit. It must be apparent that, in view of this state of the record, the court would not be warranted in setting aside the conveyances and placing the parties in status quo, regardless of our conclusions relative to the facts in the case concerning the question of fraud. Mrs. Pearce would certainly be entitled to her day in court.

It is argued that, since the trial court refused to grant the plaintiff a decree of foreclosure for the apparent reason that the note and mortgage had their inception in fraud, it necessarily follows that the Persyns are entitled to a rescission on the same ground. In other words, appellants contend that a transaction

which is induced by fraud must be rescinded or set aside in toto and that it can not be rescinded in part and affirmed in part. In the instant case, however, it should be borne in mind that the plaintiff does not appeal from the decree dismissing his suit. We are now concerned only with the rights of the appellants Persyn regardless of what may have been the reason for the dismissal of the mortgage foreclosure proceedings. Thompson, undoubtedly, has a right to have the issue of fraud, as between him and the Persyns, adjudicated.

It would greatly extend this opinion to review the details of the case. We think it will suffice to mention only those salient facts which have been controlling in the conclusion reached, namely, that the Persyns were not defrauded, but relied upon their own judgment.

The decree of the lower court is affirmed.

BEAN, C. J., BROWN and RAND, JJ., concur.