## Walter J. Scanlan & Son v. Sherbine, Appellant.

Argued April 26, 1955. Before STERN, C. J., JONES, BELL, CHIDSEY and ARNOLD, JJ.

*Clarence E. Davis,* with him *Davis & Davis,* for appellant.

*Alton A. McDonald,* with him *Myers & McDonald,* for appellees.

OPINION BY MR. JUSTICE ARNOLD, June 27, 1955:

Defendant, Sherbine, appeals from judgment entered on the jury's verdict in an action of trespass brought by plaintiff, Walter J. Scanlan & Son, to recover for coal mined and roads destroyed by Sherbine on lands under lease to plaintiff. The defense was invalidity of plaintiff's lease by reason of fraud practiced by plaintiff upon the lessors in the procurement of the lease, and that Sherbine had a valid lease of the premises.

On April 16, 1948, Walter Scanlan, one of the members of plaintiff-partnership, leased from one Basal and others, for a term of three years, the "E" seam of coal in a 225 acre tract in Cambria County. On March 1, 1950, Scanlan assigned this lease to Sherbine, the defendant, who ceased mining thereon prior to June 7, 1950, but resumed mining in December, 1950.

By another agreement of June 7, 1950, Scanlan & Son secured from the aforesaid Basals a lease of *"all"* the seams of coal under several contiguous tracts, including the 225 acre tract. This lease excepted the "E" seam of coal under another of the tracts, and also provided that no rights were to be exercised as to the 225 acre tract until expiration of the assigned lease of April 16, 1948. By a supplemental agreement dated October 3, 1950, this excepted portion on another tract was also leased to Scanlan & Son, who paid royalties upon all of the tracts to the lessors until March, 1953.

On March 10, 1951, the Basals extended the term of Sherbine's 1948 lease for an additional three year

period. On April 16, 1951, the expiration date of the 1948 lease, Scanlan & Son demanded of **Sherbine a** surrender of the premises. Sherbine refused, and on April 26, 1951, plaintiff brought this action.

Sherbine's position was that the lease of June 7, 1950, was prepared by plaintiff; that it was to have been identical with a prior expired lease had between the Basals and other parties, which leased only the "D" seam of coal; that contrary to the understanding between the Basals and plaintiff, the lease of June 7, 1950, provided for "all seams of coal"; and that there was no intention to lease to plaintiff the seam already under lease to Sherbine.

Over defendant's objection, the court allowed in evidence the supplemental agreement of October 3, 1950, whereby the "E" seam of coal under one of the tracts (excepted in the lease of June 7, 1950) was then leased to Scanlan & Son. This was the only "E" seam excepted in the lease to Scanlan & Son, and the supplemental agreement specifically referred to the prior lease of June 7, 1950, and incorporated by reference the provisions thereof. It was entirely relevant and material to the issue, since Sherbine was contending that Scanlan & Son, through fraud upon the Basals at its execution, had provided for a lease of "all" seams of coal. The supplemental agreement, together with other facts in evidence, could well be considered by the jury as proof that the Basals had fully known and recognized that the prior lease was intended to include *all* seams. If this be so, the defendant is bound by it, since he stands in no better position than the Basals. It was pertinent to the issue and clearly admissible to aid the jury in determining the Basals' knowledge or lack of knowledge of the contents of the prior lease. Likewise, the court's action in permitting the introduction of royalty checks paid to the Basals from October 3, 1950,

to March, 1953, was proper, as bearing upon the true understanding of the parties (Basals and Scanlan & Son) as to their lease of June 7, 1950. Sherbine and Charles Basal, one of the lessors who testified for him, acknowledged that they knew of the "alleged fraud" as early as December, 1950, yet royalty checks were accepted by the Basals thereafter and until 1953. This, together with all other facts in evidence, was a matter for the jury to believe or disbelieve. The charge of fraud is a serious one, and plaintiff is not to be so restricted in his counter proof as is contended by defendant. " 'Upon the trial of an issue involving questions of fraud, great liberality should be allowed in the admission of evidence, that the jury may be able to determine from all the circumstances whether the transaction was fraudulent or not' ": *Glessner v. Patterson*, 164 Pa. 224, 229, 30 A. 355. See also *Rubinsky v. Kosh*, 301 Pa. 35, 151 A. 676.

Sherbine proposed to prove that Walter Scanlan, one of the plaintiff-partners, had admitted in the presence of his witness that he could not profitably operate the 1948 lease, and that for that reason he assigned it to Sherbine. The court sustained plaintiff's objection to this testimony, and defendant assigns this as error. This had no bearing on the real issue in the case,—whether there was fraud in the procurement of the lease of June 7,—and it would merely have served the purpose of clouding the issue.

We have considered all of the alleged errors in the charge and after an examination of it find no merit in defendant's contentions. In this charge, consisting of some forty pages in the printed record, the court fairly and fully instructed the jury, and left to it the determination of all facts. One cannot take isolated excerpts and predicate error thereon when, if read with the remainder of the charge, a true and accurate charge

380

is revealed: *McDonald v. Ferrebee,* 366 Pa. 543, 547, 79 A. 2d 232.

Judgment affirmed at the cost of appellant.