Lyons, Appellant, *v.* Bodek Estate.

Argued April 28, 1958. Before JONES, C. J., MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Howard Richard,* with him *Jack Brian,* and *Berman and Richard,* for appellant.

*John F. Cramp,* with him *Hodge, Hodge & Cramp,* for appellee.

OPINION BY MR. JUSTICE ARNOLD, June 4, 1958:

Plaintiff brought this action to recover damages for injury sustained by reason of a fall in the common laundry of an apartment house owned by Jennie Bodek, deceased defendant, and in which the plaintiff had been a tenant. She alleged that she slipped upon water on the floor of the laundry, and that the deceased had known of the accumulation of water.

The defendant, Jennie Bodek, died subsequently to plaintiff's injury; and under the prohibition of the Dead Man's Act (Act of May 23, 1887, P. L. 158, §5(e), 28 PS §322) plaintiff was disqualified from testifying. However, she then offered to limit her claim to the maximum coverage of the liability insurance available to Jennie Bodek,—this to qualify her as a witness— but the trial court sustained defendant's objection to the offer for the reason that the insurance did not remove the prohibition of the Act.

The Act makes no distinction between parties plaintiff and defendant, and it cannot be questioned that plaintiff was rendered incompetent to testify because of Jennie Bodek's death. The deceased party's estate cannot be subjected to testimony emanating from the mouth of the surviving party. Nor does it matter that the deceased party was insured against liability. Unless waived by the other party, the prohibition of the

Act is absolute, without regard to the existence or non-existence of liability insurance. Cf. *Parks v. Parks,* 390 Pa. 287, 299, 300, 135[2] A. 2d 65. The court below also declined to charge that because she was prohibited from testifying, a presumption of due care operated in plaintiff's favor.

There is a presumption of due care on the part of a decedent whose death or inability to testify occurs only by reason of accident: *Schum v. Pennsylvania Railroad Company,* 107 Pa. 8. But merely because the lips of the surviving party are sealed by virtue of the Dead Man's Act does not give to such survivor the benefit of any such presumption in his favor. The plaintiff was not able to testify and give her version of the situation.

Plaintiff also contends that the court erred in permitting the jury to find that not only the defendant, but also the plaintiff, had constructive notice of the condition of the floor. The court so ruled on the basis that plaintiff had been a regular user of the laundry over a period of years. This was so manifestly correct that it cannot be questioned.

Lastly, plaintiff complains that a witness was permitted to testify for the defendant-estate, where the interrogatories were propounded to the co-defendant (against whom plaintiff suffered a nonsuit), and the name of such witness had not been given. Again, the correctness of the court's action is clear; and in addition plaintiff, at trial, did not claim surprise but fully examined the witness.

Judgment affirmed.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

On August 14, 1952, Mrs. Mary R. Lyons, 68 years of age, sustained serious injuries when she slipped and

fell on a slippery floor in the laundry room of the apartment building in which she was a tenant, and which was owned and operated by Mrs. Jennie Bodek. On August 29, 1953, Mrs. Bodek died and Mrs. Lyons brought an action in trespass against her estate, averring that it was Mrs. Bodek's negligence in failing to exercise due care in maintaining the laundry room which caused Mrs. Lyons' injuries.

At the trial the defendant interposed the so-called Dead Man's Act (Section 5 (e) of the Act of May 23, 1887, P. L. 158), as a bar to Mrs. Lyons' testifying, and the Trial Court affirmed the disqualification. The jury returned a verdict for the defendant and the plaintiff seeks a new trial, urging, inter alia, that the Dead Man's Act should not have disqualified her as a witness and that, in any event, she was entitled to the presumption that she exercised due care. I believe that her positions are logical and just.

Mrs. Bodek was not in the laundry at the time that Mrs. Lyons fell. Thus, even if she were alive she could not refute Mrs. Lyons' testimony as to the actual happening of the accident. The Dead Man's Act could not have been designed to apply to this type of case.

The Act is, of course, a salutary one and is founded on an awareness of human weakness. If two persons enter into a verbal agreement and one of them dies, the survivor, in any subsequent litigation, should not be permitted to testify because, if he should misrepresent what was actually said, no one could contradict him. The statute recognizes the rather melancholy, if justifiable, assumption that where one's interests are involved, loyalty to the flag of truth might not be enough to prevent him from stealing a march on his dead conferee. Thus, in the situations the Act was intended to cover, it has, generally speaking, worked out well. It removes from the surviving person in a contractual

relationship the temptation to lie, by giving him no opportunity to lie. However, there is a serious question as to whether, in enacting this piece of legislation, the General Assembly was thinking of tort cases. The Statute says, inter alia: "Nor, where any party to a thing or contract in action is dead, or has been adjudged a lunatic and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interests in the subject in controversy, shall any surviving or remaining party to such thing or contract, or any other person whose interest shall be adverse to the said right of such deceased or lunatic party, be a competent witness to any matter occurring before the death of said party or the adjudication of his lunacy . . ."

Throughout the entire length of the statute, nothing is said about tort actions. The only word in the statute which could, through the use of a lemon squeezer, be forced into the vessel of tort actions is that of "thing." What is a thing? We know that a thing can be almost anything, but we have no reason to assume that the Legislature would have encompassed in that expression a tort action when it could just as easily have used the word *tort*. Why could it not have said: "Nor, where any party to a *tort* or contract in action is dead, etc"? It could not have been a matter of conciseness which caused the Legislature to use the word *thing* instead of tort, since tort has even one letter less than *thing*.

In 1894, only seven years after the passage of the Act in question, the Court of Common Pleas of Lancaster County, in the case of *Irwin v. Nolde,* 164 Pa. 205, 208, ruled that it did not apply to trespass actions, specifically declaring: "It is only in cases of contract where one party to the contract is dead, by the policy of the law the other party is not allowed to testify."

This Court reversed, Justice FELL stating: "The act makes no distinction between different classes of civil actions."

This was the first bowlder thrown into the river of litigation to effectuate a ford over which all trespass actions were later to cross. I am thoroughly aware that, since then, the judges of this Court have carried, on the backs of a forced construction, the whole body of the Dead Man's Rule to the tort side of the river, and that it would be practically impossible to get them to bring it back. But I do believe that it is possible for us to introduce some sense of proportion into the interpretation on the other side of the river.

I believe that the rule should and does have its limitations based on logic and reason. I cannot accept that the Act was intended to apply where the surviving party is testifying merely to a passive physical condition of premises at a time when the decedent was not present. This should be obvious when the reason for the rule is considered. Where death has sealed the mouth of one party to a "thing or contract"; the law forbids the surviving party to speak, in order, in justice and fairness, to equalize, as far as possible, the positions of the contestants. But where the intended testimony at the trial does not refer to anything the decedent may have said or done at the time of the occurrence of the "thing or contract," the refuting evidence, on the side of the decedent's interests, exists independently of what the decedent might say. This is borne out in the present case by the fact that three janitors testified in behalf of the defendant as to the condition of the laundry room where the plaintiff claims to have fallen.

I am unable to say with conclusive finality that it was in the case of *Irwin v. Nolde,* supra, that this Court first declared that the Act of 1887 applied to tort as

well as contract actions, although that would seem to be so. But my research fails to find a case in which this Court attempted to explain how and why the Act of 1887 was intended to embrace trespass actions. It merely said in *Irwin v. Nolde* that the Act "makes no distinction between different classes of civil actions." And that was that.

It may be that when, in 1894, it made that announcement this Court was still under the influence of the old common law doctrine (changed only by the Act of April 13, 1869) which excluded litigating parties from testifying at all. But the Act of 1869 was positive and surgical. With a clean-cut stroke of the legislative scalpel it removed the tainted appendix which had infected and killed many a good cause of action, simply because the court and jury never got the facts. In retrospect, one can only wonder how law, dedicated to justice, could have limped along for so many centuries by keeping off the witness stand the very persons who knew most about the issue in controversy. But the Legislature amputated away the trammeling appendix in 1869 and the courts should avoid any possible recurrence of the disablement from other unhealthy sources. Instead of extending the rule of exclusion, as is being done in the case at bar, we should keep before us the observation by Chief Justice KEP-HART in the case of *Dalbey's Estate*, 326 Pa. 285, 287, where, in interpreting the Act of 1887, in another connection, he said: "This rule is in keeping with the modern tendency to admit all testimony having a direct bearing on issues involved, notwithstanding the witness's interest, which reflects only on his credibility."

As I have heretofore indicated, Mrs. Bodek was not present when Mrs. Lyons fell and was injured. No matter what Mrs. Lyons might say as to the manner in which she fell, Mrs. Bodek, if alive, could not con-

tradict her. In her complaint Mrs. Lyons did not assert that Mrs. Bodek pushed or jostled her. She averred that Mrs. Bodek maintained dangerous premises: they were dark, they were littered with hazardous articles, and she allowed water to accumulate on the floor. At the trial, the defendant called several witnesses who refuted these allegations by testifying that the laundry room was properly lighted and properly maintained. But there was no testimony as to what actually occurred in that room at the crucial moment because, as already stated, Mrs. Lyons was not allowed the privilege of the witness stand.

Assuming that the Trial Court under this Court's decisions, properly excluded Mrs. Lyons from testifying, was she not, then, under the circumstances, entitled to the presumption that she exercised due care? Plaintiff's counsel asked the court to charge the jury: "Next, would your honor instruct the jury as follows: in the absence of evidence that the plaintiff failed to discharge the duty imposed upon her, with the natural instinct of love of life, the presumption is that she did all that the law required her to do and was not guilty of contributory negligence?" The Trial Court refused to so charge. This, it seems to me, was clear error; certainly it was unjust. So far as her competence to testify was concerned, under the Trial Judge's ruling, Mrs. Lyons was as good as dead. Her lips were as sealed as if she herself rested in a tomb.

In death and survival actions no matter what may be the evidence surrounding the circumstances of the accident which struck down the person whose death is the basis of litigation, the judge always charges the jury that the deceased is presumed to have exercised the care which is associated with every normal person who desires to continue living. Of course, that presumption may be overcome by evidence, but the plain-

tiff's case at least starts out with that much in his or her favor. But in the case at bar, even though the plaintiff's incompetence was as complete as if she were dead, the jury was not allowed to presume that she exercised the usual type of care which characterizes the normal person who has no desire to die. This Court authorizes the application of such presumption where the plaintiff is not allowed to testify because he is insane or has lost his memory. Why, then, shouldn't we authorize it where the plaintiff, as here, may not testify because of a disqualification which she has no more voluntarily assumed than the person afflicted with insanity or amnesia?

In *Heaps v. Southern Pa. Traction Co.*, 276 Pa. 551, 553, the plaintiff was injured in such a manner that she lost all memory of what occurred at the moment of the accident. We said in that connection: "In the absence of evidence that she failed to discharge the duty imposed upon her, especially in view of the fact that her mind was a blank as to the accident and all its incidents, with the natural instinct of love of life, the presumption is that she did all the law required her to do and was not guilty of contributory negligence."

As recently as 1957 we reaffirmed this rule in the case of *Auel v. White*, 389 Pa. 208, where we said: "Where a plaintiff's mind is a blank as to an accident and all its incidents, the presumption is that he did all that the law required him to do and was not guilty of contributory negligence."

Is there any difference between applying the rule of presumed due care where the incompetency to testify is due to a failure to remember, and where it is due to the intervention of a legal rule, for which the survivor is not responsible? If the law, as Sir Edward Coke said, is the perfection of reason, where is the

reason which justifies the denial to Mrs. Lyons of the right inherent in every human being, namely, to have it thought of him or her that he or she desired to live and therefore exercised the care which accompanies such wholesome and rudimentary desire? Especially when, as here, it was through no fault of her own, that Mrs. Lyons was not allowed to say that she wanted to live.

The Dead Man's Act was never intended to make a dead letter of fairness in cases where inequality is not dictated by iron necessity. It is common knowledge in the profession that in the accomplishment of much good, the Act not infrequently inflicts some harm. In many instances the harm cannot be avoided but where, as in the case before us, an arbitrary construction works a palpable and avoidable injustice, this Court should avoid a multiplication of the error originally made in unjustifiably and without legislative sanction, extending the exclusionary rule.

I believe that a mistake was made in 1894 when this Court closed the gate tightly without apparently much study, and I believe that the error continues when this Court declines to reflect on the possibilities of good which may be gained by reappraising the entire subject.

I vote to open the gate, at least wide enough to see clearly what is happening beyond the fence.