RIDGWAY NATIONAL BANK, Guardian of the Estate of Robert Aiello, a mental incompetent, Appellant,

v.

NORTH AMERICAN VAN LINES, INC., an Indiana Corporation, Appellee.

No. 14362.

United States Court of Appeals Third Circuit.

Argued Sept. 19, 1963.

Decided Jan. 6, 1964.

Staley, Circuit Judge, dissented.

John M. Feeney, Pittsburgh, Pa. (John A. DeMay, Thomas L. Cooper, McArdle, Harrington & McLaughlin, on the brief), for appellant.

William C. Walker, Pittsburgh, Pa. (Dickie, McCamey, Chilcote & Robinson, on the brief), for appellee.

Before McLAUGHLIN, STALEY and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

In this diversity personal injury case the two car automobile collision which gave rise to the cause occurred on Route 219 in the vicinity of Ridgway, Pennsylvania, on August 15, 1959. Pennsylvania law is therefore applicable.

Robert Aiello, the plaintiff's ward, was returning from Kane, Pennsylvania, where he had picked up two amusement machines his family owned. With him was John Cappiello. It was about 1:30 A.M. and a haze had settled over the general area with patches of dense fog at particular points. The highway was two-laned and from Aiello's point of view, a bank or gentle slope rose on the left. Several houses lined the right side.

Approaching them, and traveling in a northerly direction, was a tractor-trailer driven by Howell Wilson, who was on the business of the defendant, North American Van Lines, Inc. Behind the truck driven by Wilson, was a car operated by Paul Mowry. In Mowry's car was passenger John Newell.

All vehicles were proceeding at moderate speeds and visibility was limited. From the evidence of the policemen who came to the scene, with reference to vehicle marks, point of impact, etc., and the testimony of Newell, Cappiello, Mowry and Wilson, a conflict arose as to how the accident occurred.[1] The point of impact apparently was localized several inches to the right of the center line in the lane facing north, i. e., the lane in which the North American Van truck was traveling.

Some testimony tended to show that Aiello, after negotiating a bend in the highway, discovered the defendant's truck in his lane, and according to Cappiello, Aiello turned "the car to his left to avoid the accident." [N.T. 12]. Plaintiff's vehicle apparently crossed in front of defendant's and struck the North American truck on its right front, and then veered into the bank at the side of the road. On the other hand, Wilson said that he was in his proper lane, that he had turned his trailer to his left to get out of the way of Aiello's truck, which was in the wrong lane.[2] The case was submitted to the jury upon the court's charge and a verdict was returned for the defendant.

1. Aiello was unable to testify because of his injuries.

2. "Q. Now will you tell the jury in your own words, Mr. Wilson, just what happened?

"A. Well, from the time that I noticed the car coming, I did not pay too much attention to it because I had only picked up the lights. And, as it got closer, I don't believe that I really paid too much attention then either, because to me it was just an automobile approaching. And, at a certain point, it veered across my lane of traffic onto the berm and started down the berm. And, I really don't know how close it was because I started to turn left to get out of its way, and then it veered back to its right, and that is when the contact was made."
[N.T. 350]

# 936

Plaintiff filed a motion for a new trial protesting a "ruling" of the court during trial and the instructions given by the court to the jury. From the denial of that motion, plaintiff appeals.

 The first contention is that the trial judge improperly instructed the jury on the subject of unavoidable accident. We, of course, must examine the charge as a whole, and not isolated portions out of their setting. DeMichiei v. Holfelder, 410 Pa. 483, 486, 189 A.2d 882 (1963); Walter J. Scanlan & Son v. Sherbine, 382 Pa. 376, 114 A.2d 900 (1955); Thomas v. Mills, 388 Pa. 353, 130 A.2d 489 (1957); Parker v. Yellow Cab Co., 391 Pa. 566, 137 A.2d 317 (1958). In the portion of the charge of which the appellant complains,[3] the judge was instructing the jury on the burden of proof. He first properly charged that the mere happening of an accident does not mean that someone was negligent. Lesoznski v. Pittsburgh Railways Co.,

409 Pa. 102, 185 A.2d 538 (1962); Zilka v. Sanctis Const., Inc., 409 Pa. 396, 186 A.2d 897 (1962); DiGiannantonio v. Pittsburgh Railways Co., 402 Pa. 27, 166 A.2d 28 (1960); Bohner v. Eastern Express, Inc., 405 Pa. 463, 175 A.2d 864 (1961). He went on to say that this accident could have happened without negligence, and the burden was on the plaintiff to show that his injuries were caused by the defendant's negligence. Each party claimed the other was negligent and the liability issues framed at pretrial were: Was the Defendant negligent? Was the Plaintiff contributorily negligent? Unavoidable accident was not raised as a defense by the defendant.[4]

 On these issues, each party must carry his burden. The plaintiff cannot merely claim he was not negligent and therefore the defendant was. As we said in Nash v. Raun, 149 F.2d 885, 888 (3 Cir. 1945), a situation factually similar, "the mere fact that there was an ac-

3. "Now, going to the root of the matter, the principal question which will first confront you is who if anyone is responsible for the happening of this collision between the pickup truck driven by Robert Aiello and the Van Lines tractor-trailer outfit or rig that was driven by Mr. Wilson.

"To begin with, it should be emphasized that the mere fact that someone receives injuries does not prove that anyone is negligent or liable to pay damages as a result of those injuries. It is possible to have an accident in the true sense; something which just happens or something which comes about as a misfortune or calamity without anyone at all being to blame or legally responsible for it.

"It could very well happen that if you believe that there was heavy fog at the scene of the accident that you might find that neither driver was careless or negligent; that they were both pursuing their proper business in a careful and prudent manner and reacted in the normal and expected manner to the hazards of the highway, so that this whole unfortunate catastrophe was purely an accident and that no one was careless or responsible legally for damages as a result of the collision.

"For anyone to recover damages, it is necessary for the plaintiff—the plaintiff being the party who brings the action and claims the damages—to sustain what

is called the burden of proof. That means that the plaintiff must prove the allegations of the complaint that are made against the defendant or person who defends the complaint." [N.T. 398–399]

4. Although there is little, if any, law in point, unavoidable accident is probably not an affirmative defense which had to be raised in the pleadings, or waived. It is not named as an affirmative defense under Rule 8(c) F.R.Civ.P., or under Pennsylvania practice. Pa.R.C.P. No. 1030, 12 P.S.Appendix, as amended March 27, 1956. Nor can it be considered an affirmative defense, for a "truly affirmative defense raises matter outside the scope of plaintiff's prima facie case * * *." 2 Moore, Federal Practice § 8.27 [3] at 1851 (2d Ed. 1962). It was not pleaded specifically in this suit, but came into being through the negative defense of the defendant, that is, a denial of negligence. In the language of the common law, the "defense" of unavoidable accident does not give "color" to the plaintiff's claim, i. e., "admit an apparent right in the opposite party and rely on some new matter by which that apparent right is defeated." There is no admission of negligence by defendant. 2 Moore Federal Practice 8.27 [3] at 1856 (2d Ed. 1962). See Wilson and Gardner Co. v. Wilson, 334 Pa. 289, 5 A.2d 575 (1939); Dunlevy v. Fenton, 80 Vt. 505, 68 A. 651 (1908).

cident and that the plaintiff was not himself negligent, does not per se, mean that the defendant must have been negligent." See also Sajatovich v. Traction Bus Co., 314 Pa. 569, 172 A. 148 (1934).

Basic to a favorable determination of these issues of negligence is the necessity that each party sustain his burden of proof. In rendering a comprehensive charge on burden of proof the court necessarily will speak of principles equally applicable to a charge of unavoidable accident. Both affirm that without negligence on the part of the defendant, the plaintiff is not entitled to a verdict. Yet they are not the same. The gist of the burden of proof charge is that the plaintiff must show that defendant's negligence was responsible for his injury. The gist of the unavoidable accident charge is that some circumstance or condition so affected the actions of the parties who at all times were exercising due care, that they could not avoid an accident.[5] See Magnolia Coca Cola Bottling Co. v. Jordan, 124 Tex. 347, 78 S.W.2d 944, 97 A.L.R. 1513 (1935).

Appellant characterizes the charge before us as an instruction on unavoidable or inevitable accident.[6] But, there was no specific charge of the kind that was present in Butigan v. Yellow Cab Co., 49 Cal.2d 652, 320 P.2d 500, 65 A.L.R.2d 1 (1958), upon which appellant relies.[7] Nowhere did the court use the terms of art "unavoidable" or "inevitable." Nowhere did the trial judge outline a clear alternative available to the jury beyond the issues of contributory negligence and negligence.

Underlying the plaintiff's complaint that the judge charged unavoidable accident, is the assertion that he injected something into the trial that did not belong there. It is less a question whether the judge charged unavoidable accident than it is whether in charging burden of proof, proximate cause or concept of negligence, he brought into issue to the

5. Very early in Pennsylvania decisions the concept of inevitable accident and act of God were closely aligned. Hays v. Kennedy, 41 Pa. 378 (1861). There the court speaks of inevitable accident as one no human foresight can avert, faced with a contributing cause. See also Martin v. Philadelphia, 54 Pa.Super. 563 (1913). Beach v. Parmeter, 23 Pa. 196 (1854). Courts have spoken also of certain happenings as "pure" accidents. Bradley v. Lake Shore and Mich. So. Ry. Co., 238 Pa. 315, 86 A. 200 (1913). Both so-called "pure" accidents and unavoidable accidents are properly embraced in the proposition that the mere happening of an accident does not mean someone was negligent. A single occurrence might be described as a pure accident or simply one which could not be avoided. See Springfield Township v. Indemnity Insurance Co. of North America, 361 Pa. 461, 64 A.2d 761 (1949).

6. The plaintiff further complains that the trial judge perpetuated his error of charging unavoidable accident by asserting several times through the charge in substance "(Y)our main problem is to determine which driver, if either of them, is guilty of any negligence." [N.T. 406] Assuming arguendo that the charge was one of unavoidable accident, we believe it was proper, if not obligatory, to make such a reference as "if either of them," or the like. To say otherwise would be to run counter to the principle that the happening of an accident does not mean someone was negligent. If the judge did not add that key thought, "if either of them," the court would be tending to establish what it was the burden of the litigants to establish, i. e., that someone was negligent.

7. There the court charged: "In law we recognize what is termed an unavoidable or inevitable accident. These terms do not mean literally that it was not possible for such an accident to be avoided. They simply denote an accident that occurred without having been proximately caused by negligence. Even if such an accident could have been avoided by the exercise of exceptional foresight, skill, or caution, still, no one may be held liable for injuries resulting from it. Bear in mind, however, that if any defendant failed to exercise ordinary care, and if that failure was a proximate cause of the accident in question, then, whether or not such conduct was the sole cause, the accident was not unavoidable, and the defense of unavoidability may not be maintained by that defendant." 49 Cal.2d at pp. 656, 657, 320 P.2d at p. 503, 65 A.L.R.2d at p. 5.

prejudice of the plaintiff, a factor not raised by the evidence. The questions pleaded were negligence and contributory negligence. On those the court could and should charge the governing rules for which there was evidentiary support. If the facts called for it, the court might have been forced to charge emergency doctrine, res ipsa loquitur, or exclusive control. On the facts present in this trial the court could very well have charged unavoidable accident.

The decisions cited by appellant holding that a charge of unavoidable accident was prejudicial merely stand for the proposition that if the facts brought out by the evidence lead irrevocably to the conclusion that one or the other was negligent, then a charge of unavoidable accident would be misleading and prejudicial. In Atkinson v. Roth, 297 F.2d 570, 574 (3 Cir. 1961), the court said, "[t]he evidence in the case demonstrates that either driver was responsible, or both were. Indeed, neither contended below that the accident happened by reason of any factor other than the negligence of the other." [8] Appellant contends that this is analogous to the circumstances before us. We disagree. The district judge of necessity alluded to the factor of fog, which was clearly evident from the testimony. In the case of Butigan v. Yellow Cab Co., 49 Cal.2d 652, 320 P.2d 500, 65 A.L.R. 1, 8 (1958), which prompted an excellent annotation upon which appellant strongly relies, the court held the unavoidable accident charge misleading, because it held that there was "no affirmative evidence that the accident resulted from any cause other than the negligence of the defendants."

In Matthews v. Derencin, 360 Pa. 349, 62 A.2d 6 (1949), the jury was instructed that if this was purely an unavoidable accident, there could be no recovery. The Supreme Court, finding error, said 360 Pa. at p. 352, 62 A.2d at p. 7, "It is clear that on no possible theory was the accident unavoidable, and no such suggestion should have been made to the jury." On those facts, there was no basis for such charge. Here it is otherwise. See also LaPosta v. Himmer, 358 Pa. 69, 55 A.2d 751 (1947).

The problem is rather governed by our decision in Burch v. Reading Co., 240 F.2d 574 (3 Cir. 1957), in which we affirmed the district court (140 F.Supp. 136 (E.D.Pa.1956)) in its ruling 140 F.Supp. at page 156 that "[t]he decided cases support the principle adopted by the trial judge that the question of whether an accident is unavoidable or is the result of defendant's negligence should be submitted to the jury where the evidence supports the possibility of an unavoidable accident." See also El Paso Electric Co. v. Surrency, 169 F.2d 444, 447 (10 Cir. 1948).

In the respect complained of the charge was sound and called for by the evidence.[9]

■■ The second ground for reversal is that the trial judge by his instruction did not allow the plaintiff the full benefit of the presumption of due care to which he is entitled under Pennsylvania law. It is true that the plaintiff who survived his injuries but whose memory did not, was entitled to the benefit of a presumption that he exercised due care. Heaps v. Southern Pennsylvania Traction Co., 276 Pa. 551, 120 A. 548 (1923); Ruto-

8. That case had to do with the emergency doctrine charge, not unavoidable accident. Here the court alluded to the fog as a possible contributory factor to the accident which might be found to have occurred even though both parties were found to have exercised due care.

9. We note in passing the language of the Supreme Court of Pennsylvania in Bloom v. Bailey, 292 Pa. 348, 353, 141 A. 150,

152 (1928) which, if properly utilized as an instruction, would be similar to the instruction given in this case: "From the mere happening of the accident, no presumption of negligence arises, and drivers are not to be held liable where their only proven fault is inability to avoid a collision, under circumstances which are unusual and not likely to be anticipated." See also Ferrell v. Solski, 278 Pa. 565, 123 A. 493 (1924).

vitsky v. Magliocco, 394 Pa. 387, 147 A.2d 153 (1959); Lyons v. Bodek Estate, 393 Pa. 131, 142 A.2d 199 (1958); Auel v. White, 389 Pa. 208, 132 A.2d 350 (1957). But this presumption is rebuttable, and must give way to evidence. Its chief usefulness is "to bridge the gap of silence caused by death" or loss of memory. Sloniger v. Enterline, 400 Pa. 457, 162 A.2d 397 (1960). But where there was evidence to show how the accident occurred, though conflicting, the "gap" was "bridged" and the presumption in effect lost some of its force, because, based on the evidence as to how the accident occurred, the jury could determine for itself whether the plaintiff exercised due care. With this in mind the trial judge correctly instructed the jury that:

> "In this case, you need not worry much about that presumption because there is an abundance of evidence on both sides of the case and, depending upon which evidence you believe and prefer to rest your verdict upon, you will be able to rest it upon actual evidence rather than upon presumptions." [N.T. 404].

Finally, appellant urges that the court erroneously ruled that the defendant would be allowed to cross-examine plaintiff's witness as to his "bias or interest". The occasion for this arose out of plaintiff's effort to rehabilitate the story of the witness Cappiello which had been seriously attacked on cross-examination. Plaintiff called A. J. Hinkle to the stand and offered to show a "prior consistent statement", allegedly made by Cappiello. After Hinkle had been sworn defendant asked for side-bar conference at which time defendant's counsel advised that he would inquire into the interest of Hinkle, who was an employee of plaintiff's insurance carrier. The court said: "I suppose he [Defendant] could show anything that would affect the interest of the witness' company in the outcome of the case. * * * I think anything that really shows the company's interest would be admissible." [N.T. 240] Faced with this view the witness was withdrawn by plaintiff. Plaintiff claims error on the theory that defendant was erroneously given the right to impeach the witness.

We think first that a showing of interest on the part of the employer of a witness could readily be valid cross-examination. Fleischman v. Reading, 388 Pa. 183, 130 A.2d 429 (1957) citing with approval Webb v. Hoover Guernsey Dairy Co., 138 Or. 178, 4 P.2d 631 (1931); Majestic v. Louisville & Nashville R. R., 147 F.2d 621 (6 Cir. 1945). But the court never did make a ruling to that effect, or at any rate a determination subject to appeal. Reviewable decisions with respect to evidence are those which deal with the admissibility or competence of evidence, sought to be introduced. See Armstrong v. Atlantic Coast Line R. R., 137 S.C. 113, 133 S.E. 826, 48 A.L.R. 482 (1926); Commonwealth v. Smith, 266 Pa. 511, 109 A. 786 (1920); Whelan v. Welch, 50 App.D.C. 173, 269 F. 689 (1920). While on occasion testimony may be admitted de bene esse (Doe v. Lucy, 83 N.H. 160, 139 A. 750 (1927) or provisionally, i. e., that the court defers final ruling on the evidence until a later time, [See Stewart v. Huntingdon Bank, 11 Serg. & R. (Pa.) 267 (1824)], that kind of permissible practice does not include the initial, offhand reaction of a judge that, at a later time during the trial, certain evidence would be allowed. A trial court deals with the present, the issues at hand, concrete decisional situations—not speculative propositions as to what may be right under postulated circumstances however seemingly unchangeable. Preliminary comment by a judge solicited by counsel, regarding a future trial incident, could be helpful as a guide to the court's thinking but is not a conclusive disposal of the particular controversy which can be taken up. "[B]efore the admission of testimony objected to at the trial can be considered by the appellate court as a basis for review, it must appear that the trial judge made a *final ruling* as to the admissibility of the testimony." Armstrong v. Atlantic

Coast Line R. R., 137 S.C. 113, 133 S.E. 826, 48 A.L.R. 482, 487 (1926).

The trial judge made it clear that he was not deciding the question at that stage. Plaintiff's attorney intimated as much himself [10] before he withdrew his witness. The court's review would be necessarily subject to change as the evidence unfolded, if it did. Conceivably, the interrogation itself might be conducted in a fashion that would be objectionable and might never get anywhere. See Lane v. Southern R. Co., 192 N.C. 287, 134 S.E. 855, 51 A.L.R. 1114 (1926); Woodmen of the World Camp No. 1772 v. Goodman, Tex.Civ. App., 193 S.W.2d 739 (1946); 5 Am. Jur.2d Appeal and Error § 557 (1962); 88 C.J.S. Trial § 73 (1955); 3 Am.Jur. Appeal and Error § 260 (1936).

The judgment of the district court will be affirmed.

STALEY, Circuit Judge (dissenting).

I dissent from the view of the majority that the district court's charge contained no prejudicial error. As the majority states, this case was tried by each of the parties on the theory that the negligence of the other was the proximate cause of the accident. Plaintiff's allegation of negligence was specifically denied by the defendant which averred that "any injuries sustained were caused by the negligence of Plaintiff." In its pre-trial statement, defendant particularized its version that the accident was due entirely to the negligence of plaintiff. At trial the evidence adduced by defendant was directed to proving this version of the incident. Nonetheless, the district court, in its instructions to the jury,[1] charged *sua sponte* that they might find that "this whole unfortunate catastrophe was purely an accident and that no one was careless or responsible legally for damages

as a result of the collision." Though he did not use the term "unavoidable accident," this is the clear import of the language he used. Plaintiff's counsel promptly objected to this instruction and renewed that objection in his motion for a new trial. The district court denied both on the ground that he had merely paraphrased the rule that the mere happening of an accident does not prove negligence.

I agree with the majority's statement that we must examine the charge as a whole, and not isolated portions out of their setting. I further agree that the charge on unavoidable accident was made in amplification of the court's instructions on burden of proof. But that fact does not mitigate the prejudicial nature of the charge, for the law is clear that if a finding of unavoidable accident is not possible on any theory of the evidence, such a charge constitutes reversible error. Matthews v. Derencin, 360 Pa. 349, 62 A.2d 6 (1948); Butigan v. Yellow Cab Co., 49 Cal.2d 652, 320 P.2d 500 (1958). See also, 65 A.L.R.2d 1, 12. The sole evidentiary basis for such an instruction in the case at bar, and that given by the district court both in the charge itself and in its oral opinion denying plaintiff's motion for a new trial, was the testimony that there was fog at or near the scene of the accident. But an examination of this testimony makes it abundantly clear that neither party attributed the accident to the fog, and none of the witnesses so testified. Indeed, the driver of defendant's truck stated that the fog did not impair his visibility. The testimony of the other witnesses was simply to the effect that fog was present. In sum, there is no evidence in this record which would support a jury finding that the fog was a factor in causing this collision. Accordingly, the charge of the district court was reversible error.

10. Mr. Feeney: "And, I am not trying to get a prior ruling from the court as to the validity of the question. I am merely asking that Mr. Walker not ask the question regardless of how he feels about it in front of the jury until I have a chance to object to it. In other words, he can tell us at side bar, he is going to ask it and ask for a ruling." [N.T. 247]

1. See n. 3 of the majority opinion.