**Lonnie W. LOWRY, Sr.**

**v.**

**A/S D/S SVENDBORG AND D/S (af) 1912 A/S**

**v.**

**UNIVERSAL TERMINAL & STEVEDORING CORPORATION.**

Civ. A. No. 32302.

United States District Court
E. D. Pennsylvania.

June 15, 1967.

Wilfred F. Lorry, for plaintiff.

John T. Biezup, for defendant.

Francis E. Marshall, Philadelphia, Pa., for third-party defendant.

### MEMORANDUM AND ORDER
### SUR MOTION FOR
### A NEW TRIAL
(Document 42)

VAN DUSEN, District Judge.

This case is before the court on the plaintiff's Motion For A New Trial (Document 42), filed after the entry of a judgment in favor of the defendant upon the special verdict of the jury.[1]

On the morning of November 5, 1962, plaintiff longshoreman was employed as a holdman in the loading of sisal hemp aboard the defendant's vessel, the S. S. "Maren Maersk," while the vessel was in the Delaware River at Pier 78, South Wharves, Philadelphia. After removing the tarpaulin and some hatchboards covering the after end of the main deck hatch opening to the No. 3 hold, the holdmen in the gang in which plaintiff was working began to descend into the hold. This was accomplished by means of a ladder, the uppermost portion of which consisted of three footholds in the after end of the hatch coaming. On the outside of the coaming, at each side of a rod used as a step by persons climbing over the top of the coaming from the deck, there was a group of guy ropes extending upward on an angle of approximately 70 degrees, so that a truncated "V" was formed. The plaintiff was the third man in his gang to go down the ladder on the morning of the accident (N. T. 36, 52, 79, 118). He testified that he put his right leg over the coaming and inserted his right foot in the top foothold. He grasped the top of the coaming with both hands and started to swing his left leg over. As he was doing this, his left foot struck the group of guy ropes on his left, causing him to lose his balance and fall into the hold (N. T. 121–2).

1. Contention that the trial judge erred in instructing the jury that they might answer questions 1 and 2 "no" on the basis of a finding that plaintiff was solely negligent or contributorily negligent up to 100%, since there was no evidence of negligence on the part of the plaintiff.

Plaintiff bases his first reason for new trial, at page 7 of his brief (Document 49), on the following instructions of the trial judge:

"As between the plaintiff and the shipowner, the shipowner cannot relieve himself of this responsibility for being free of negligence by delegating the job of unloading the cargo to the stevedoring company. The shipowner is still responsible if there was negligence on its part. Of course, if you find that the sole negligence was that of the plaintiff, then you would answer this question [#2] 'No.'" (N. T. 403)

" 'D–4. If you find that plaintiff's injuries were substantially caused

1. The interrogatories submitted to the jury on defendant's liability and the jury's answers to questions 1 and 2 were as follows:

"1. Did the arrangement of the guy ropes at the ladder leading to the after end of the No. 3 hold on November 5, 1962, constitute an unseaworthy condition which was a substantial factor in causing the injuries to plaintiff?

Yes or No      No
_____

"2. Was there any negligence on the part of the defendant shipowner on November 5, 1962, acting through its agents, officers or employees, which was a substantial factor in causing the injuries to plaintiff, Lonnie W. Lowry, Sr.?

Yes or No      No
_____

"If your answer to either question 1 or 2 is 'yes,' please answer question 3. If you answer both questions 1 and 2 'no,' please do not answer any other questions.

\*    \*    \*    \*    \*

"4. Was there any negligence on the part of the plaintiff which was a substantial contributing factor in causing the injuries he sustained?

Yes or No      No
_____

"5. If your answer to question 4 is in the affirmative, in what percentage did plaintiff's negligence contribute to the accident?

_____%"

solely by his own negligence, your verdict will be for the shipowner.'

"And of course, then you would answer questions 1 and 2 'No.' Obviously, if you find that the plaintiff was careless, that he swung his leg over there too fast, and that caused him to fall, that because all these people went down without incident, and because you accept Mr. Keeler's testimony as to the impossibility of his own story of how it happened, and so on, then there would be no fault on the part of the shipowner." (N. T. 407–8)

"And in answering Question 5, you have to consider the percentage which the plaintiff's negligence bore to the total fault causing the accident. Of course, if the plaintiff was the only one at fault, then it would be one hundred per cent." (N. T. 423)

"Supposing you only found one dollar in answer to Question 3, one dollar of damage, and supposing you put in here, say, one per cent, just to take a ridiculously low figure." (N. T. 424)[2]

In order to support this contention, plaintiff must show: (1) that there was insufficient evidence of the plaintiff's contributory negligence to warrant submission of that issue to the jury, and (2) that even though the jury did not answer the interrogatory on contributory negligence (No. 4), plaintiff was somehow prejudiced by the instructions on that issue. A showing that item (1) is true does not entitle plaintiff to a new trial in the absence of a showing that item (2) is also true. Because it has been determined that plaintiff could have suffered no prejudice from the challenged instructions, it is unnecessary to rule on the sufficiency of the evidence of contributory negligence.[3]

The instructions upon which plaintiff relies to show that the contributory negligence instructions prejudiced him are those in which it is stated that the jury would answer questions 1 and 2 "no" if they found that the plaintiff's own negligence was the sole cause of the accident (N. T. 403, 407–8). However, a finding that the plaintiff's negligence was the sole, or exclusive, cause of his injury necessarily includes a finding that no other negligence (or unseaworthiness) contributed to it.[4] Properly read, the challenged instructions suggest a finding in favor of the defendant if the jury should find that the accident was not caused by any negligence of the defendant or unseaworthiness of its vessel, but instead was caused by plaintiff's own negligence.

These instructions (at N. T. 403, 407–8) occurred during the portion of

---

2. Plaintiff also objects to other references by the court to plaintiff's contributory negligence. See N. T. 424, 425, 426, 428.

3. It is noted, however, that the record contains the following evidence, and other evidence, which indicates that the plaintiff may have been contributorily negligent: two men, both larger than the plaintiff, had preceded him down the ladder without incident (N. T. 52–53); the entire gang of eight men went up and down the ladder twice on November 5, 1962, without incident (N T. 52–54, 203) ; the plaintiff had been out of work for about two weeks in October with a chest cold and had worked only 10 hours the week before the accident (N. T. 158), so that his weakened physical condition may have resulted in sub-normal alertness; he had a cloth bag containing clothing slung over his shoulder as he started to climb down the ladder (N. T. 122), which the jury could find restricted his movements; defendant's expert, Mr. Keeler, testified that if plaintiff's foot had struck the guy rope as he described, plaintiff would have fallen astraddle the coaming and not into the hold (N. T. 220); plaintiff testified that he "spun" or "swung" his left leg around in going over the top of the coaming (N. T. 121, 158).

4. For this reason, the instant case is distinguishable from Blankenship v. Ellerman's Wilson Line New York, Inc., 265 F.2d 455 (4th Cir. 1959), relied on by plaintiff, holding that the failure to instruct the jury that assumption of risk has no bearing on the question of unseaworthiness was reversible error. It is noted that in the instant case the jury was specifically instructed that assumption of the risk would not be a defense to the plaintiff's action (N. T. 437–9).

the charge which dealt exhaustively with what would constitute negligence and causation on the part of the defendant.[5] A careful review of the entire charge reveals that the jury was made fully aware of the factors to be considered in determining whether the defendant shipowner was guilty of any negligence which was a substantial factor in causing plaintiff's harm.

It is noted also that the jury was instructed that it was to answer the special interrogatories one after another in the order in which they were listed, and that if the jurors answered the first two questions in the negative, they were not to answer any of the remaining questions, including questions 4 and 5 dealing with contributory negligence (N. T. 383–5).

2. Contention that the trial judge erred in giving an unavoidable accident instruction, since such instruction indicated to the jury that liability for unseaworthiness is based on fault.

■ Plaintiff's second reason for new trial, stated at page 7 of Document 49, is predicated upon the following statements of the trial judge made in the course of the charge to the jury:

"You understand that there can be unavoidable accidents. That happens. You do not just say 'There is an accident, and hence the ship is responsible.' "

Plaintiff argues that since unseaworthiness is a species of absolute liability,[6] it was erroneous to suggest to the jury that plaintiff's injury may have occurred as a result of an unavoidable accident. This argument is rejected. A careful review of the entire charge on the question of unseaworthiness reveals that the above-quoted remarks did not constitute prejudicial error. At least three times [7] during the course of the charge (N. T. 393, 394, 396) the trial judge described the defendant's duty to provide a seaworthy ship as an "absolute" duty. The meaning of the term "absolute" was disclosed to the jury by reading plaintiff's point #6, which contained, inter alia, this language: "* * the term 'absolute' means that the duty cannot be satisfied by the exercise of reasonable care * * *." (N. T. 394–5). In addition, the meaning of the concept of unseaworthiness, as applied to the facts of this case, was adequately explained to the jury (N. T. 396–7).[8]

The case of Yanow v. Weyerhaeuser Steamship Company, 250 F.2d 74 (9th Cir. 1957), relied on by plaintiff, does not hold that an unavoidable accident instruction may never be given in a case

5. See N. T. 402–8.

6. See Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). It is noted that defendant's point for charge #5, which was read immediately before the above-quoted language, is based on Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960).

7. The two sentences immediately after the above-quoted language at N. T. 396, concerning which plaintiff complains, are:

"Now, further on this question of seaworthiness. As I have said to you, as far as this plaintiff is concerned, the ship owes him this absolute, nondelegable duty to provide seaworthy appliances which are reasonably fit for the purpose for which they are to be used."

8. The following language appears at N. T. 396–7:

"As I have said to you, as far as this plaintiff is concerned, the ship owes him this absolute, non-delegable duty to provide seaworthy appliances which are reasonably fit for the purpose for which they are to be used.

*     *     *     *     *

"An appliance of the ship is unseaworthy if it is improper, inadequate, defective, or unsafe for the purpose for which it was used. Was this method of getting into the after part of the Number 3 hatch, consisting of the ladder—you see it here on PT–2 in front of you—approached through these two guy ropes or guy lines—you know, when we use the term 'lines' that means ropes—improper, inadequate, defective, or unsafe for the purpose of forming a means of getting to and from this hold of the Number 3 hatch? That is your first question."

involving a claim of unseaworthiness. It holds only that under the particular circumstances of that case, the trial court's use of certain language,[9] which was not used in the instant case, constituted prejudicial error.

The case of Miller v. Alvey, 246 Ind. 560, 207 N.E.2d 633 (D.Ind.1965), relied on by plaintiff, which disapproves instructions on unavoidable accident, generally is not binding authority in this Circuit. On the contrary, the rule in this Circuit is that instructions on unavoidable accident may be given in a proper case. See Ridgway National Bank v. North American Van Lines, Inc., 326 F.2d 934 (3rd Cir. 1964).

With respect to plaintiff's first two contentions discussed above, it is noted that the propriety of particular instructions is to be determined from consideration of the charge as a whole and not isolated portions out of their setting. See Ridgway National Bank v. North American Van Lines, Inc., supra, at p. 936, and cases there cited; Gilmore v. Marsh, 424 Pa. 361, 227 A.2d 881 (1967).

3. Contention that the trial judge erred in restricting plaintiff's cross-examination of the witness Wright.

■ Plaintiff's third reason for a new trial, at p. 7 of Document 49, is based upon the court's refusal to permit him to examine his rebuttal witness, Mr. Wright, about the loose ropes lying on the deck at the foot of the outside of the coaming from which the plaintiff fell. When he offered this witness, plaintiff's counsel stated that he was calling him to rebut the testimony of defendant's expert, Mr. Keeler, who had testified that the area around the after end of No. 3 hatch, including the portion of the deck upon which the loose ropes were lying,

was safe and was not a weather deck walking area subject to the U. S. Department of Labor Safety Regulations for Longshoring (N. T. 286). The trial judge permitted plaintiff to call Mr. Wright on rebuttal over the objection of counsel for the defendant and third-party defendant, but directed plaintiff's counsel not to ask him about the loose ropes lying on the deck since they could not possibly have been a substantial factor in causing plaintiff's harm and any testimony about them by Mr. Wright would be an attempt to impeach defendant's witness on a collateral matter in violation of the rule of Attorney General v. Hitchcock (N. T. 287–8). After careful reconsideration of that ruling, the court remains of the view that it was correct.

In his brief in support of the instant motion, plaintiff asserts that the key issue of liability in the case was housekeeping, and that the untidy condition of the ropes lying on the deck at the base of the coaming was relevant to that issue. However, plaintiff testified that when he fell, he was on top of the coaming (not on the deck) and that his fall was caused by his left foot coming in contact with one of the guy ropes extending above the coaming (N. T. 122). The condition of the deck at the base of the coaming could have played no part in causing plaintiff's fall. Hence, any testimony on the condition of the deck would not be relevant to plaintiff's case, and under the rule of Attorney General v. Hitchcock, such testimony could not be used to impeach the credibility of the witness Keeler. III Wigmore, Evidence (3rd Ed.) § 1003.

None of the cases cited on pages 17–18 of plaintiff's brief requires a different result. In all of those cases the issue was what evidence may properly be

9. The charge in the *Yanow case* contained the following language:
  " 'There are such things as unavoidable accidents—*accidents which happen without the fault of anyone*—and if you determine that such is the case here, *then your deliberations will be at an end,* and your verdict must be

for the defendant even though the plaintiff was injured.' (Emphasis added.)"
  The emphasis was supplied by Judge Denman, who wrote the opinion for the U. S. Court of Appeals for the Ninth Circuit, to indicate which language was considered offensive.

offered in rebuttal (or surrebuttal), rather than what constitutes an attempt to impeach a witness on a collateral matter. In addition, the proffered testimony in those cases was relevant to the issues in the case.[10]

For the foregoing reasons, the Motion For A New Trial will be denied.[11]

10. In Schoen v. Elsasser, 315 Pa. 65, 172 A. 301 (1934), the rebuttal testimony reflected on the ability of two of the defendant's witnesses to observe the collision. Such testimony would not be excluded under the rule of Attorney General v. Hitchcock. See III Wigmore, Evidence (3rd Ed.), §§ 1004, 1005.

11. The defendant's and third-party defendant's briefs have been filed as Documents 50 and 51.