### 50352. KAMENSKY v. STACEY et al.

WEBB, Judge.

E. Q. Stacey, d/b/a Thomasville Iron & Metal Company, brought suit against Harry Kamensky, d/b/a E. Cohn & Company, and Seaboard Coast Line Railroad Company seeking to recover the value of 99,200 pounds of scrap metal allegedly shipped from Stacey in Thomasville to Kamensky in Columbus via Seaboard. Count I alleged that Kamensky received the shipment and failed to pay for it, and Count II alleged that since Kamensky had denied receiving it, Seaboard was liable for failure to deliver. Verdict and judgment were rendered in favor of

defendant railroad on Count II, and in plaintiff Stacey's favor against defendant Kamensky on Count I. Kamensky now appeals to this court. *Held:*

1. The key issue in this case was whether Kamensky did or did not receive the carload of scrap metal. Prior to trial Kamensky served continuing interrogatories upon Stacey, and the questions and answers pertinent to enumeration of error 4 are as follows: "[Q.] If physical checks were made as purported of said railroad car on the premises of E. Cohn & Company [Kamensky], please state as follows: a. Who made those checks? [A.] By the carrier. [Q.] b. What is the name or names of the individuals so checking? [A.] Unknown to plaintiff at this time."

These answers to the interrogatories were not supplemented, and at trial plaintiff Stacey called Mr. Gwendolyn Barr as his witness. Before Barr could testify, Kamensky moved that the witness be barred from testifying, or in the alternative for a continuance or mistrial, on the ground that Barr's name was not furnished by Stacey as requested by the above interrogatories. Stacey, for his failure to thus comply, imposed the ultimate sanction upon himself and withdrew Barr as a witness, and the trial court was of the opinion that the error, if any, was thus cured.

Unfortunately for Kamensky, however, co-defendant railroad had itself subpoenaed Barr as its own witness, Kamensky had failed to pursue discovery of this witness' identity from the railroad, and the railroad subsequently called Barr as its own witness after plaintiff had rested. Kamensky renewed his objections and motion with regard to Barr's testimony, but the trial court, having ascertained that no interrogatories had been served upon the railroad, overruled them and allowed Barr to take the stand. Barr testified that he was an employee for the Southeastern Demurrage and Storage Bureau; that it was his responsibility to make daily yard checks of Kamensky's premises to determine loading and unloading activity and storage and demurrage charges for rail equipment; that he had done so at the time involved in this litigation, and had ascertained from visual inspection of the contents of the railroad car in question that the car had arrived at Kamensky's premises

in a loaded condition. This testimony cinched Stacey's case against Kamensky and exonerated the railroad, and Kamensky complains in Enumeration 4 that the trial court erred in allowing Barr's testimony without giving Kamensky an opportunity to interview or depose him, or in the alternative erred in failing to grant a mistrial.

This enumeration is without merit. It is noteworthy that at the time Barr was initially offered as a witness by Stacey, and again when he was called as a defense witness by the railroad, Kamensky did not claim surprise as a ground of his objections and motions. The main purpose of imposing the sanctions of postponement, mistrial, etc. against a party for failing to comply with continuing interrogatories is the prevention of surprise. *Jones v. Atkins,* 120 Ga. App. 487, 491 (171 SE2d 367). "The broad purpose behind the deposition and discovery rules was to take the sporting element out of litigation . . . The sporting theory of litigation thrives on surprise — including surprise witnesses. Elimination of this sort of tactics is a legitimate purpose of the discovery rules, especially when considered in connection with Rule 16 on pre-trial proceeding." 4 Moore's Federal Practice 26-212, § 26-57 [4] — "Names of Trial Witnesses." Thus where the complaining party cannot legitimately claim surprise, either because he knew of the existence of the witness or had equal means of knowing, it is not error to fail to invoke the sanctions of postponement, mistrial, barring the witness, etc. Quatrano v. Marrocco, 61 Ill. App. 2d 1 (208 NE2d 632); Buckler v. Sinclair Refining Co., 68 Ill. App. 2d 283 (216 NE2d 14); Moorman v. Simon, 8 FRD 328 (5) (D.C.Mo.); Smith v. DeFusco, 267 A2d 725 (R.I.).

It affirmatively appears from the record that not only did Kamensky's employee know that Barr came upon the premises daily to inspect the railroad cars, but Kamensky himself testified: "Q. You testified earlier that you had seen Mr. Barr who is the Southeastern Demurrage man while he was making his rounds of your yard, is that right? A. I watched Mr. Barr for years, Mr. Young. Q. You do that because money is involved in the thing and you naturally want to see? A. I happen to be in a position when he comes in where the cars are at, I am there where the work is going on." It cannot be disputed that the extent of

Kamensky's knowledge of this witness, who was making daily inspections of the railroad cars on his premises in Columbus, was superior to that of Stacey; and we have no hesitation in holding under these circumstances that even had Stacey not withdrawn the witness and the witness had been allowed to testify for Stacey without sanctions being imposed, no reversible error would appear.[1]

But in any event Stacey withdrew the witness, curing his failure to supply the witness' name in answer to the interrogatories, and no sanction could be imposed against the railroad since it had properly subpoenaed the witness and it had not been served with interrogatories with respect to the witness. "Lastly, plaintiff complains that a witness was permitted to testify for the *defendant-estate,* where the interrogatories were *propounded to the co-defendant* (against whom plaintiff suffered a nonsuit), and the name of such witness had not been given. Again, the correctness of the court's action is clear; and in addition plaintiff, at trial, *did not claim surprise* but fully examined the witness." Lyons v. Bodek's Estate, 393 Pa. 131, 133 (142 A2d 199). (Emphasis supplied.) See also Wolfe v. Northern Pacific R. Co., 147 Mont. 29 (409 P2d 528).

2. No reversible error appears in the overruling of Kamensky's motion for directed verdict made at the close of plaintiff's evidence since the evidence as a whole authorized the verdict rendered. *Young v. Wiggins,* 229 Ga. 392 (1) (191 SE2d 863).

3. The evidence amply supported, if not demanded, the verdict rendered, and the trial court did not err in overruling Kamensky's motions for directed verdict made

---

[1]Caveat: The instant case deals with "the identity and location of persons having knowledge of any discoverable matter" (CPA § 26 (b) (2); Code Ann. § 81A-126 (b) (1)), and not with a list of witnesses to be called at trial as contained, for example, in a pre-trial order. See the example at 4 Moore's Federal Practice 26-214, § 26.57. Compare *Ambler v. Archer,* 230 Ga. 281 (1) (196 SE2d 858).

at the close of the case, for judgment notwithstanding the verdict, and for new trial.

*Judgment affirmed. Bell, C. J., and Marshall, J., concur.*

ARGUED MARCH 3, 1975 — DECIDED APRIL 9, 1975.

*Hirsch, Beil & Partin, Milton Hirsch, Jacob Beil, John P. Partin,* for appellant.

*Kelly, Champion, Denney & Pease, Philip J. Johnson, William H. Young, III,* for appellees.