Boelter vs. Ross Lumber Co.

BOELTER, Respondent, vs. Ross LUMBER COMPANY, Appellant.

*April 28 — May 16, 1899.*

*Master and servant: Negligence: Personal injury: Defective appliances:*
    *Contributory negligence: Fellow-servants: X-ray examination: In-*
    *structions to jury: Damages: Court and jury.*

1. Unless it appear affirmatively that a servant, injured by a defective wagon furnished by the master, had used or been acquainted with the wagon for a sufficient length of time to have necessarily tested its strength or observed its defects, the rule requiring a master to furnish his servant with reasonably safe machinery and implements applies, even though it be a common and simple implement and in the hands of a servant having as much experience with and knowledge of it and its use as the master.

2. Plaintiff was injured by the breaking of a wheel of one of defendant's wagons which he was using for the first time under the direction of defendant's foreman. He testified that he observed no defect

in it, and could discover none by looking at it, and that no one in-
formed him before the injury that it was unsafe or defective.
*Held,* that it cannot be said as a matter of law that the plaintiff
assumed the risk or was guilty of contributory negligence.

3. The attention of defendant's foreman having been called to the de-
fect the day before the injury, his negligence in not warning plaint-
iff was the negligence of defendant; and it not appearing by undis-
puted evidence that plaintiff knew of defendant's custom to have
its teamsters look after their own wagons, instead of speaking to
the foreman about repairs, it cannot be said as a matter of law
that the refusal to grant a nonsuit or direct a verdict for defend-
ant was error.

4. It is the duty of the master to provide suitable and safe machinery
and appliances for his servant's use, and keep the same in proper
repair, and he cannot shift such duties onto his subordinates.

5. It is no abuse of discretion to refuse to compel a party to submit to
a second examination by the X-ray process, when plaintiff had been
accidentally burned during the first examination which lasted two
hours, and had also permitted two of defendant's medical witnesses
to examine him.

6. An instruction to the jury that " Ordinary care and prudence is such
care and prudence as is exercised by the mass of mankind or ma-
jority of mankind in their daily affairs," without qualification or
limiting it to the same or similar circumstances to those in issue, is
error.

7. A charge which leaves it to the jury to infer that any negligence on
the part of the defendant was actionable, even though it was not
the proximate cause of the injury, is erroneous.

8. To justify the assessment of damages for future or permanent dis-
ability, it must appear that continued or permanent disability is
reasonably certain to result from the injury complained of.

APPEAL from a judgment of the circuit court for Mara-
thon county: W. C. SILVERTHORN, Circuit Judge.  *Reversed.*

For the appellant there was a brief by *Curtis, Reid &
Smith,* and oral argument by *George Curtis, Jr.* They argued,
among other things, that the rule requiring the master to
furnish his servant with reasonably safe machinery and ap-
pliances does not apply to a common and simple implement
such as an ordinary lumber wagon, especially in the hands
of an experienced servant having as much knowledge of the

Boelter vs. Ross Lumber Co.

character of the implement and its use as the master him-self. *Marsh v. Chickering*, 101 N. Y. 396; *Cahill v. Hilton*, 106 N. Y. 512; *Meador v. L. S. & M. S. R. Co.* 138 Ind. 290; *Borden v. Daisy R. M. Co.* 98 Wis. 407; *Holt v. C., M. & St. P. R. Co.* 94 Wis. 596; *Corcoran v. Milwaukee G. L. Co.* 81 Wis. 191; Bailey, Personal Injuries, §§ 8, 9, 11, 13; *Georgia R. & B. Co. v. Nelms*, 83 Ga. 70; *Burlington & C. R. Co. v. Liehe*, 17 Colo. 280. Plaintiff was guilty of con-tributory negligence as a matter of law. *Holt v. C., M. & St. P. R. Co.* 94 Wis. 596; *Borden v. Daisy R. M. Co.* 98 Wis. 407; *Hazen v. West Superior L. Co.* 91 Wis. 208; *Casey v. C., St. P., M. & O. R. Co.* 90 Wis. 113; *Soutar v. Minne-apolis I. E. Co.* 68 Minn. 18; *Wedgwood v. C. & N. W. R. Co.* 41 Wis. 478; *Kelly v. Abbott*, 63 Wis. 307; *Goltz v. M., L. S. & W. R. Co.* 76 Wis. 136; *Ballou v. C. & N. W. R. Co.* 54 Wis. 257; *Behm v. Armour*, 58 Wis. 1. The negligence shown, if any, other than plaintiff's negligence, was that of a fellow-servant. *Van den Heuvel v. Nat. F. Co.* 84 Wis. 636; *Peffer v. Cutler*, 83 Wis. 281; *Peschel v. C., M. & St. P. R. Co.* 62 Wis. 338; *Stutz v. Armour*, 84 Wis. 623; *Kliegel v. Weisel & V. Mfg. Co.* 84 Wis. 148; *Johnson v. Ashland W. Co.* 77 Wis. 51; *Armour v. Hahn*, 111 U. S. 313; *Blazinski v. Per-kins*, 77 Wis. 9; *Hoth v. Peters*, 55 Wis. 405; *Heine v. C. & N. W. R. Co.* 58 Wis. 525; *Kelly v. Abbott*, 63 Wis. 307; *Dwyer v. Am. Exp. Co.* 82 Wis. 307.

For the respondent there was a brief by *Barbers & Beg-linger*, attorneys, and *John H. Brennan*, of counsel, and oral argument by *John H. Brennan* and *Charles Barber*.

Cassoday, C. J. This is an action to recover damages for personal injury sustained by the plaintiff while in the de-fendant's employ as teamster engaged in drawing a load of lumber, by reason of one of the wheels breaking down, thereby throwing the plaintiff off from the top of the load to the ground, and severely injuring him. Issue being joined

and trial had, at the close of the trial the jury returned a general verdict, wherein they found for the plaintiff, and assessed his damages at $5,000. From the judgment entered thereon the defendant brings this appeal.

1. It is contended that upon the undisputed evidence a nonsuit should have been granted or a verdict directed in favor of the defendant. One ground for such contention is that the rule requiring a master to furnish his servant with reasonably safe machinery and appliances does not apply to a common and simple implement, such as an ordinary lumber wagon, especially in the hands of a servant having as much experience with and knowledge of the implement and its use as the master himself. There might be much force in this contention if it appeared affirmatively that the plaintiff had used or been acquainted with the wagon for a sufficient length of time to have, necessarily, tested its strength or observed its defects. *Corcoran v. Milwaukee G. L. Co.* 81 Wis. 191; *Burnell v. West Side R. Co.* 87 Wis. 392; *Holt v. C., M. & St. P. R. Co.* 94 Wis. 596; *Borden v. Daisy R. M. Co.* 98 Wis. 407. In this last case it was held that: "A servant is not ordinarily obliged to search for defects in instrumentalities furnished for his use. Nevertheless, in the use of ordinary tools, he takes the risk of all defects therein which are open and obvious to a person of ordinary care by reasonable attention to them as they are used."

In the case at bar it is undisputed that at the time of the injury the defendant had twenty-four or twenty-five different wagons in use at its mills at Arbor Vitæ; that it had two or three teams, and employed two or three teamsters, including the plaintiff, who was then forty-three years of age and had only been in such employment twenty days; that the general method of such teamsters in such business was to use the same team, and hitch onto some one of the empty wagons, and load it with lumber in the green yard, and draw it into the dry yard, and leave it there until the same should

be used, and so on.   The plaintiff testified, however, that he used the same team and the same wagon all of the time he was there; that about 5:30 o'clock in the afternoon of July 20, 1894, the defendant's foreman in the yard told him to unhitch from his wagon, and go to the mill and get an empty wagon, and load it up with six-inch siding strips in the seventh alley, and take them up to the planing mill, which was eighty or ninety rods distant; that he did so unhitch from his wagon, and went and hitched his team upon the only remaining empty wagon, and drove into the seventh alley, and loaded the wagon, as directed, putting on between 2,000 and 2,500 feet; that the man assisting him put the chain around the load, and then handed him the lines; that he stood upon the front part of the load, and at first drove south seven or eight rods, and then turned to the right, and drove to the eighth alley; that when he got to the eighth alley he sat down on the front part of the load, and drove north about eighty rods, when the nigh hind wheel broke down, and threw him off the load, and severely injured him; that he had never used that wagon before; that he observed no defect in it; that he could not discover any defect in it by looking at it, and that no one informed him before the injury that it was unsafe or defective.   We cannot say, as a matter of law, upon the undisputed evidence, that the plaintiff either assumed the risk or was guilty of contributory negligence.   There is evidence tending to prove that a day or so prior to the injury one of the defendant's teamsters by the name of White drew a load of about 4,000 feet of lumber upon that same wagon; that he and the man with him observed, while the load was on, that the wheel was dished, and made snake tracks; that it was a lighter wagon than the others; that before the injury, and about half past 1 or 2 o'clock on the day of the injury, the teamster White informed the defendant's foreman that it was not fit to be used any more, but that the foreman replied that he thought it might

be used to haul light loads. The negligence of the foreman in that regard was the negligence of the defendant. *Schultz v. C., M. & St. P. R. Co.* 48 Wis. 375.

2. Another ground upon which it is urged that a nonsuit should have been granted, or a verdict directed for the defendant, is that, if there was any negligence, it was that of a fellow-servant. This contention is based upon evidence to the effect that the several wagons of the defendant were kept in repair at the defendant's blacksmith shop and wagon repair shop at Arbor Vitæ; that the foreman did not take much notice of any of the wagons; that it was not customary for teamsters to speak to him about repairing wagons, but that they would themselves look after their own wagons, and, if they saw one in bad order, they would take it to the shop. But it does not appear — certainly not by the undisputed evidence — that the plaintiff had any knowledge of such custom. Besides, the law is well settled that it is the duty of the master to provide suitable and safe machinery and appliances for the use of his employees, and keep the same in proper repair, and that the master cannot shift such duties onto his subordinates. 1 Bailey, Master & S. §§ 250, 251, and cases there cited. The general rule, however, does not apply to defects arising from daily use of an appliance, which are not of a permanent character and do not require the help of skilful mechanics to repair the same. Id. § 259. Upon the evidence in the record, we cannot say, as a matter of law, that the refusal to grant a nonsuit or direct a verdict in favor of the defendant was error.

3. We perceive no error in refusing the defendant's application for a second examination by the X-ray process. The plaintiff had submitted to one such examination, lasting two hours or more, during which he was, by accident, burned, and he refused to submit to another examination. He had also permitted two of the defendant's medical witnesses to examine him. Within the recent ruling of this court, we think

there was no abuse of discretion in refusing to compel him to submit to a second examination by such X-ray process. *O'Brien v. La Crosse,* 99 Wis. 421.

4. Error is assigned because the court charged the jury that: "Ordinary care and prudence is such care and pru-dence as is exercised by the mass of mankind or majority of mankind in their daily affairs. . . . It is such care and prudence as is exercised by the mass of mankind or majority of mankind." This was given without qualifica-tion, or limiting it to the same or similar circumstances, and, under the repeated rulings of this court, was errone-ous. *Duthie v. Washburn,* 87 Wis. 233, and cases there cited; *Hennesey v. C. & N. W. R. Co.* 99 Wis. 110, 118. The charge is open to criticism in several particulars. It is re-peatedly stated, in effect, that if the wagon was unsafe for the purpose required, and the defendant knew or should have known of it, and failed to repair, or notify the plaint-iff, "then the defendant was guilty of negligence." It is to be remembered that the defendant was only liable for actionable negligence. The several portions of the charge referred to left the jury to infer that any such negligence on the part of the defendant was actionable negligence, even though it was not the proximate cause of the injury. *Deisenrieter v. Kraus-Merkel M. Co.* 97 Wis. 279; *Maitland v. Gilbert P. Co.* 97 Wis. 487; *McFarlane v. Sullivan,* 99 Wis. 363, 364.

5. This court has repeatedly held that, "to justify the assessment of damages for future or permanent disability, it must appear that continued or permanent disability is reasonably certain to result from the injury complained of." *White v. Milwaukee City R. Co.* 61 Wis. 537. To the same effect, *Hardy v. Milwaukee St. R. Co.* 89 Wis. 187; *Block v. Milwaukee St. R. Co.* 89 Wis. 371; *Smith v. Milwaukee B. & T. Exch.* 91 Wis. 368. Some portions of the charge are open to the criticism that it authorized the jury to find dam-

ages for the natural and probable consequences of the injury, although in other portions of the charge the rule as to reasonable certainty is sufficiently stated. There may be some doubt whether some of the testimony given by a medical expert, to which exception was taken, is sufficient to justify a finding of permanent injury, but, as it will be obviated upon a new trial, we refrain from considering the same.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

As to the power to compel a plaintiff to submit to a physical examination, see note to *McQuigan v. D., L. & W. R. Co.* (129 N. Y. 50), in 14 L. R. A. 466.— REP.