Bohner, Appellant, *v.* Eastern Express, Inc.

464

Argued September 26, 1961. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and ALPERN, JJ.

*John D. Ray,* with him *Ray & Good,* and *McArdle, Harrington & McLaughlin,* for plaintiff, appellant.

*Myron E. Rowley,* with him *Ralph E. Smith, James E. Rowley,* and *Rowley, Smith & Rowley,* for corporate defendants, appellees.

*Thompson Bradshaw,* with him *Bradshaw and Panner,* for individual defendant, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, December 5, 1961:

This is an action in trespass arising out of a rear-end collision in which a passenger car ran into a tractor-trailer on the Pennsylvania Turnpike. The individual defendant—Raymond Riopel—was the owner and the driver of the passenger car. Plaintiff-appellant, who was riding in the passenger car, suffered personal injuries. The jury returned a verdict in plaintiff's favor and against all defendants. All of the defendants filed motions for judgment non obstante veredicto and for a new trial. The Court below entered judgment n.o.v. for the corporate defendants—Eastern

Express, Inc., T & T Trucking Company and Vigo Trailer Rentals—and granted a new trial to Riopel, the individual defendant. From these judgments and from the order granting Riopel a new trial, plaintiff took this appeal.

## Appeal From Judgments Non Obstante Veredicto

"In considering a motion for judgment n.o.v., the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor: Ason v. Leonhart, 402 Pa. 312, 165 A. 2d 625; McDonald v. Ferrebee, 366 Pa. 543, 79 A. 2d 232": *Kaplan v. Kaplan,* 404 Pa. 147, 148, 171 A. 2d 166.

## The Evidence

In considering the judgments n.o.v. the facts may be thus stated:

About 4 o'clock on the morning of January 6, 1957, two men, whose disabled car was parked on the *berm* on the Pennsylvania Turnpike near the Beaver Valley Interchange, flagged down the tractor-trailer which was operated by defendant Eastern Express, Inc., for defendants T & T Trucking Co. and Vigo Trailer Rentals. The driver of the tractor-trailer was proceeding in a westerly direction about a mile and a quarter west of the Beaver Valley Interchange. When he came to the crest of an incline he saw the two men standing by their car. The truck driver slowed down to ascertain whether they were in need of assistance. When he was opposite them, he determined that they did need assistance, and he thereupon intended to pull off onto the berm which was covered with snow. Before he could pull off the road, one of the two men jumped into the tractor-trailer. At about that moment Riopel's car

crashed into the rear of the tractor-trailer and plaintiff was seriously injured in the collision.

The car in which plaintiff was riding contained, in addition to plaintiff and Riopel, two other passengers who were in the rear seat. All of the occupants were students at an Iowa school and were returning to school after spending the Christmas holidays at home. Riopel had left his home in Chicopee, Massachusetts, about noon of the day preceding the accident. He had picked up plaintiff and the others en route and had been driving without substitution or relief for 16 hours, although there is some evidence that several rest stops were made. When Riopel and plaintiff had driven home from school, plaintiff had driven some of the time and expected to do some of the driving on their return trip to school. At the last stop before the accident, plaintiff had offered to relieve Riopel who refused the offer stating that he "felt fine." There is no evidence as to when or where—the time or the distance before the accident—this conversation took place. Plaintiff thereupon went to sleep as did the other two passengers. The accident occurred while all three passengers were asleep.

Right after the collision, the truck driver and the man who had jumped onto the tractor ran to the rear of the trailer and found Riopel sitting behind the wheel of his car. Both men, as well as a State trooper who arrived at the scene of the accident minutes later, testified that the rear lights and other lights on the tractor-trailer were lit and that Riopel said "I must have fallen asleep." Riopel never denied this statement. Moreover, Riopel testified (a) that he was travelling between 55 and 60 miles an hour and (b) that, although he had his headlights on high beam, he did not see the tractor-trailer until he was between 60 and 100 feet* behind it. The evidence further proved that Ri-

---

* Depending on which estimate in his testimony is accepted.

opel, if he were awake and looking, should have been able to see even an unlighted tractor-trailer from a distance of 350 feet.

## Appellant's Contentions

Plaintiff alleges that the truck driver was negligent in that (1) his rear lights were not on, and (2) he stopped on the highway.

Riopel was plaintiff's only witness to prove defendants' negligence. He testified that he saw defendants' tractor-trailer 60 to 100 feet away in the same lane in which he was driving. He did not know whether it was stopped or not. He pulled out to try to pass the tractor-trailer but crashed into it. He said he must have fallen asleep and when he woke up after the accident he could not tell, but thought there were no lights on the rear of the trailer. His pertinent testimony was as follows: "I did not see any lights . . . I was expressing the lights subjectively. I'll say, objectively, there were no lights on that truck. Q. You took a good look, and you satisfied yourself that there were no lights at all on the rear of the truck; is that right? A. In so far as the impression you get in that split second . . . there was no reasoning involved, just an impression. . . . Q. Did you see the lights of it? A. My lights were right on it. Q. *Was it lit up or wasn't it?* A. *I couldn't tell you. I don't remember the lights.*"*

"The mere happening of a collision or accident does not raise an inference or presumption of negligence by either party. Plaintiff must prove by a fair preponderance of the evidence that defendant was negligent and that his negligence was the proximate cause of the injury; and while he does not have the burden of disproving contributory negligence, he cannot recover if his own case shows him to have been guilty of contribu-

---

* Italics throughout, ours.

tory negligence; . . . [citing cases]": *Lewis v. Quinn,* 376 Pa. 109, 110-111, 101 A. 2d 382. See to the same effect: *DiGiannantonio v. Pittsburgh Railways Co.,* 402 Pa. 27, 166 A. 2d 28; *Dunmore v. McMillan,* 396 Pa. 472, 152 A. 2d 708; *Schofield v. King,* 388 Pa. 132, 130 A. 2d 93.

In *Mrahunec v. Fausti,* 385 Pa. 64, 69, 121 A. 2d 878, the Court said: "Plaintiff's case fails for the additional reason that he falls within the well established principle, viz., where plaintiff has the burden of proving certain facts he cannot recover if his evidence is so uncertain or inadequate or equivocal or ambiguous or contradictory as to make findings or legitimate inferences therefrom a mere conjecture: Wagner v. Somerset, 372 Pa. 338, 341, 93 A. 2d 440; Musleva v. Patton Clay Mfg. Co., 338 Pa. 249, 12 A. 2d 554." See to the same effect: *Moyerman v. Glanzberg,* 391 Pa. 387, 395, 138 A. 2d 681; *DiGiannantonio v. Pittsburgh Railways Co.,* 402 Pa., supra.

Riopel's weak, uncertain, equivocal and contradictory testimony as to the lights and his admission that the accident occurred because he must have fallen asleep, offered the jury at best for plaintiff only a guess as to whether defendant's lights were lighted and if not whether the absence of lights was the cause of the accident.

It is unnecessary to analyze and review the authorities as to whether plaintiff's evidence as to the lights was negative or positive—as to the distinction, see *Ferruzza v. Pittsburgh,* 394 Pa. 70, 145 A. 2d 706, and cases therein cited. It is unnecessary to discuss these cases because (a) plaintiff's evidence was so weak, uncertain and contradictory that it did not sustain his burden of proof and (b) his own evidence disclosed that the accident was due to an intervening superseding cause, to wit, Riopel's negligence.

Plaintiff's second contention is that the parking of defendants' tractor-trailer on the highway even though for only a few moments and for a worthy purpose constituted negligence and necessitated the submission of the case to the jury. There is no merit in this contention: *Johnson v. Angretti*, 364 Pa. 602, 73 A. 2d 666; *Kaplan v. Kaplan*, 404 Pa. 147, 171 A. 2d 166; *Listino v. Union Paving Co.*, 386 Pa. 32, 37-38, 124 A. 2d 83; *DeLuca v. Manchester Laundry and Dry Cleaning Co.*, 380 Pa. 484, 488, 112 A. 2d 372.

In *Johnson v. Angretti*, 364 Pa., supra, the Court said (pages 606, 607): "As to section 1019 [now section 1020] of the [Vehicle] Code, . . . the decisions are numerous to the effect that section 1019 of the Code was not intended to prohibit the momentary stopping of a vehicle or a temporary obstruction of the highway if for a proper purpose and under proper circumstances: [citing cases] . . . Moreover, it is clear that such alleged violation bore no causal relation whatever to the happening of the accident which was due entirely to the intervening and superseding negligence of Angretti . . . The situation created by the stopping of the bus was merely a circumstance of the accident and not its proximate cause: [citing cases]."

While " '[O]rdinarily the question whether the negligence of a defendant is a proximate cause of the accident is for the fact-finding tribunal . . ., where . . . the remoteness of the causal connection between defendants' negligence and plaintiff's injury clearly appears from the evidence, the question becomes one of law [for the Court] :' " *Kaplan v. Kaplan*, 404 Pa., supra; *Listino v. Union Paving Co.*, 386 Pa., supra.

In other words, Riopel's negligence in falling asleep and not being able to stop his car or change its course in time to avoid colliding with the tractor-trailer— which even if its lights were out was clearly visible— was the superseding intervening and proximate cause

of the accident. We therefore affirm the judgment in favor of the corporate defendants non obstante veredicto.*

## New Trial

We agree with the lower Court that from several of appellant's arguments it would appear that he does not know that the test for judgment n.o.v. and for a new trial are very different, and he is likewise apparently unaware of the inherent power, function and duty of a trial Court in considering a motion for a new trial.

With respect to a new trial, "[w]here a trial Judge or Court sees and hears the witnesses, it has not only an inherent fundamental and salutary power, but it is its duty, to grant a new trial when it believes the verdict was capricious or was against the weight of the evidence and resulted in a miscarriage of justice [citing numerous recent cases] . . .

"Moreover, in such circumstances, namely, where the jury's verdict is capricious or against the weight of the evidence or results in a miscarriage of justice, it should not be allowed to stand, no matter how many new trials must be granted in the interest of justice: Elia v. Olszewski, 368 Pa., supra, and Maloy v. Rosenbaum Co., 260 Pa., supra": *Clewell v. Pummer,* 388 Pa. 592, 598, 599, 131 A. 2d 375. See to the same effect: *Sherman v. Manufacturers Light and Heat Company,* 389 Pa. 61, 68, 132 A. 2d 255; *Greco v. 7-Up Bottling Company,* 401 Pa. 434, 165 A. 2d 5; *Hartigan v. Clark,* 389 Pa. 283, 288, 289, 133 A. 2d 181; *Lupi v. Keenan,* 396 Pa. 6, 8, 151 A. 2d 447; *Coward v. Ruckert,* 381 Pa. 388, 393, 113 A. 2d 287; *Frank v. Losier & Co., Inc.,* 361 Pa. 272, 276, 64 A. 2d 829.

---

* The lower Court has stated in its opinion that if judgment n.o.v. was reversed it would have granted a new trial because the weight of the evidence was so strongly in favor of the defendants that the verdict shocked the Court's judicial conscience. We approve this practice, as it is an obvious wise time-saver.

"We will not reverse the grant of a new trial unless (1) there was a clear abuse of discretion or (2) an error of law which controlled the outcome of the case, . . . [citing numerous recent cases]": *Segriff v. Johnston,* 402 Pa. 109, 114, 166 A. 2d 496.

Did the grant of a new trial to Riopel constitute a clear abuse of discretion, under all the relevant evidence? It is clear to us as it was to the jury and to the trial Court that Riopel was undoubtedly negligent. While the lower Court believed that plaintiff's falling asleep when he knew that Riopel had been driving nearly 600 miles for a period of 16 hours with only a few rest stops, amounted to assumption of risk and contributory negligence as a matter of law, he did not enter a judgment n.o.v. in favor of Riopel. Instead he granted a new trial and said:

"Viewing the testimony as a whole and the reasonable inferences to be drawn therefrom in a light most favorable to the plaintiff, we cannot enter a judgment n.o.v. in favor of Riopel, but we conclude that a new trial should be had of the issues between Bohner and Riopel on the ground that the verdict is against the weight of the evidence. . . . We conclude, that, under the circumstances, the interests of justice require that a new trial be had of the issues between Bohner and Riopel."

We wish we could agree with this conclusion of the trial Judge because it is imperative for the safety of our citizens that the terrific traffic toll of accidents, injuries and deaths on the highways of Pennsylvania— an accident occurs every 4 minutes—caused by reckless or inefficient or negligent or drunken or drowsy drivers, must be stopped. Any passenger who rides with such a driver may be guilty of contributory negligence as a matter of law; or a verdict in favor of such a passenger may be against the weight of the evidence; or the case may be solely a jury question—depending in each instance on the facts of that particular case.

In *Frank v. Markley*, 315 Pa. 257, 173 A. 186, the Court aptly said (page 260): ". . . To require a guest to be always awake and alert to take part in driving an automobile would have a tendency to destroy the efficiency of the driver. As a general rule his mind is fixed on his work, and there is no more exasperating experience to a driver than to have his car driven from the back seat. However, it cannot be said that under all circumstances a guest may entrust his safety to the driver and thereby relieve himself of responsibility. If some additional inculpatory evidence of sufficient importance appears, such evidence, together with the fact of sleeping, should be submitted to the jury for a finding as to contributory negligence, or such additional evidence may be of so much importance and so grave as to constitute contributory negligence as a matter of law. To illustrate: In the present case the mere fact of the guest sleeping would not be evidence of negligence and should not be so considered; but, there is the additional fact that this guest went to sleep when he knew that he and the driver had worked the day before, drove from New Castle to Youngstown in the evening, there met some young ladies, spent the evening at their home and at a dance hall, dancing until late at night, then went to an eating house, and from there left at 3 o'clock in the morning to drive home. Under such circumstances it became a question for the jury as to whether he, as a reasonably prudent man, should have permitted himself to fall asleep, entrusting his safety solely to the driver of the car: . . ."

The instant case contains unusual facts. Plaintiff asked Riopel before the accident and while they were at a rest stop how he felt, and offered to drive. Riopel replied that he "felt fine" and refused the offer. This testimony of plaintiff was uncontradicted by Riopel or by anyone, and the trial Judge does not state that he disbelieved the testimony or the credibility of the plain-

tiff. We therefore believe that the question of plaintiff's contributory negligence under this evidence—i.e., whether plaintiff was justified in going to sleep in order to prepare himself for the driving he expected to do later—was properly left to the jury, and since neither its accuracy nor credibility was challenged the grant of a new trial to Riopel was an abuse of discretion.

Judgment n.o.v. for each corporate defendant affirmed. Order granting a new trial to Riopel is reversed and record remanded with directions to enter judgment on the verdict in favor of plaintiff against Raymond Riopel on payment of the jury fee.

Mr. Justice COHEN concurs in the affirmance of the judgment n.o.v. for each corporate defendant but would affirm the order granting a new trial to Riopel.