BOURASSA, Respondent, v. GATEWAY ERECTORS, INC., Appellant.

*No. 235. Argued February 1, 1972.—Decided February 29, 1972.*
(Also reported in 194 N. W. 2d 602.)

For the appellant there were briefs by *Kluwin, Dunphy, Hankin & Hayes* of Milwaukee, and oral argument by *Gerald T. Hayes.*

For the respondent there was a brief by *Schellinger & Doyle of Milwaukee,* and oral argument by *Stanley F. Schellinger.*

HALLOWS, C. J.   Two issues are raised on this appeal: (1) Was Bourassa's negligence at least equal to Gateway's as a matter of law and should recovery under

the comparative negligence law therefore be denied; and (2) were six rulings made by the trial court erroneous and so prejudicial as to require a new trial in the interest of justice?

### Contributory negligence.

The apportionment of negligence by a jury, like any other answer in the verdict will be sustained by this court if there is any credible evidence which under any reasonable view supports the jury's findings. *Fisher v. Simon* (1961), 15 Wis. 2d 207, 112 N. W. 2d 705; *Neider v. Spoehr* (1969), 41 Wis. 2d 610, 165 N. W. 2d 171; *Netzel v. State Sand & Gravel Co.* (1971), 51 Wis. 2d 1, 12, 186 N. W. 2d 258.

A review of the evidence shows Gateway was to furnish the shoring or scaffolding which supported the forms used in constructing the concrete floors and the beams. The forms for the floor were furnished by the subcontractor but the general contractor had the duty to construct the forms for the beams. The scaffolding consisted of metal braces upon which were placed wooden ledger beams on which joists were laid at right angles. These joists protruded several feet beyond the edge of the building. In erecting the forms for the concrete beams, the general contractor used these protruding joists as support for a plywood plank, which served as a working platform for its employees on the outside of the building. On July 24, 1965, the date of the accident, the pouring and the hardening of the concrete for the floor and beams in this part of the hospital addition called Section A had been completed and Gateway removed its supporting scaffolding. Although the scaffold was removed, some of the joists stayed up against the underside of the floor or what would be the ceiling for the space below. These joists

were held to the undersurface because of braces which were nailed to the joists and to the beam forms. As a result, the work platform of the general contractor remained over the edge of the structure without any substantial support.

There is testimony, stressed by Gateway, that while the scaffolding was removed there was considerable noise from the timbers and beams falling down and, in fact, the floor in Section A vibrated during this procedure. It was also testified that a person looking at Section A from the outside could see the scaffolding was removed and some planks and parts of the wooden form for the horizontal beams were not supported. It was also testified that if Bourassa had looked down and under the edge of the newly poured floor before he stepped on the plank platform, he would have observed the absence of support for the platform. On these facts it is argued a foreman familiar with the construction knew or should have known the platform was unsafe.

The evidence, however, showed Bourassa had spent the day in Section C with his crew and did not know the scaffold had been removed in Section A and he did not hear the noise incident to the removal of the scaffolding. Bourassa further testified that while working in Section C his view of Section A was blocked by the scaffolding in Section B and when he went from Section C to Section A by climbing a ladder to the top of Section B, he did not have an occasion to notice whether the shoring was removed in Section A. He also testified it would be difficult for him to stop and peer over the edge of the building to see if the scaffolding was under the floor to support the plank and the joists extending beyond the building. Bourassa was injured when in removing some braces and wood on the outside of the building used for the beam forms he stepped on the working platform to retrieve the lumber.

The platform, being unsupported because Gateway had removed the scaffold, gave way and Bourassa was injured.

While it is clear Gateway had no contractual obligation to erect or provide a scaffold for work platforms on the outside of the building for use by the general contractor, the superintendent of Gateway testified the use of the protruding joists of the subcontractor as support for the general contractor's platform for working on the forms for the horizontal concrete beams was a regular practice in the industry. There was also testimony that before the accident the construction superintendent saw several joists unsupported and told Gateway's foreman to have his men strip the "whole works" and not leave anything hanging in the air.

We are of the opinion that although the evidence would sustain a greater allocation of causal negligence to Bourassa, his negligence was not at least equal or greater to Gateway's negligence as a matter of law.[1] While the evidence may not support the exact apportionment of negligence as found by the jury, neither is the apportionment so unsupported that the case should be retried in the interest of justice.[2]

---

[1] As Wisconsin's comparative negligence law stood on the date of this accident, Bourassa could recover if his contributory negligence does not equal Gateway's negligence. By ch. 47, Laws of 1971, sec. 895.045, Stats., was amended to provide a plaintiff may recover against the negligent defendant if his contributory negligence is not greater than the defendant's negligence. This allows recovery in cases where the negligence is found to be equal.

[2] The writer would apply the rule of *Powers v. Allstate Ins. Co.* (1960), 10 Wis. 2d 78, 102 N. W. 2d 393, to the apportionment of negligence and grant a new trial with the option to the plaintiff to accept the apportionment determined as reasonable by this court. *See: Lawver v. Park Falls* (1967), 35 Wis. 2d 308, 151 N. W. 2d 68 (concurring opinion); *Pruss v. Strube* (1968), 37 Wis. 2d 539, 155 N. W. 2d 650.

*New trial in the interest of justice.*

Gateway claims it was error to allow Bourassa to amend his complaint on the last day of trial. During the trial it became clear the general contractor, the employer of Bourassa, and not Gateway, owned the platform plank on which Bourassa stepped. Bourassa moved to amend his complaint to allege Gateway was negligent because it "failed to remove unsupported scaffolding planks and shoring from the second floor of the addition. . ." On the record it does not appear that Gateway was misled as to the nature of the negligence alleged in the complaint. Who owned the plywood plank would seem to be immaterial. The negligence was not in ownership but in the removal of the steel shoring and lumber which supported the plank which constituted the work place for employees of the general contractor. Amendments to pleadings are permitted by sec. 269.44, Stats., which is to be liberally construed. *Wipfli v. Martin* (1967), 34 Wis. 2d 169, 148 N. W. 2d 674; *Siedenburg v. Severson* (1971), 50 Wis. 2d 40, 183 N. W. 2d 35. There is no error in the court allowing the amendment. *Turner Mfg. Co. v. Gmeinder* (1924), 183 Wis. 664, 198 N. W. 611; *McCraw v. Witynski* (1969), 43 Wis. 2d 313, 168 N. W. 2d 537.

In instructing the jury, the court, over the objection of Gateway, stated the momentary diversion or preoccupation of a workman in the discharge of his duties minimized the degree of care required by him in the absence of such diversion or such preoccupation. This instruction was based on Wis J I—Civil 1051.[3] The

[3] "1051 **Duty of workman: preoccupation in work minimizes duty** . . . You are further instructed that momentary diversion of attention or preoccupation of a workman in the discharge of his duties minimizes the degree of care required of him in the absence of such diversion or preoccupation. . . ."

question is whether the facts warranted the giving of such an instruction. Here, Bourassa had to reach down to remove the braces and some wood siding of the form for the beam and when the braces were loosened, he stepped down to the unsupported platform to remove and to retrieve them. In performing this work he was absorbed and preoccupied with the work at hand and therefore was entitled to an instruction on whether an ordinarily prudent workman under such conditions would have acted similarly.[4] *Knutter v. Bakalarski* (1971), 52 Wis. 2d 751, 756, 757, 191 N. W. 2d 235.

Error is also assigned because the trial court in its instruction to the jury made reference to the Wisconsin Administrative Code, which had been received in evidence. Sec. Ind 35.11, 3 Wis. Adm. Code, October, 1963, Register No. 94, could not be used as a basis upon which to ground negligence in this case because the metal scaffolding was not designed specifically to support a working platform and by its nature could not be taken down by first removing the topmost member thereof. That method of dismantling is required by that section. Furthermore, this section created a statutory duty of the employer in relation to his employee, and Gateway was not the employer of Bourassa either by contract or by delegation. 3 Wis. Adm. Code, sec. Ind 35.01, January, 1956; *Lovesee v. Allied Development Corp.* (1970), 45 Wis. 2d 340, 348, 173 N. W. 2d 196. While we have doubt this section of the administrative code should have been admitted and referred to in the instruction, the trial court was careful in instructing the

---

[4] In a somewhat analogous situation considering the preoccupation of a workman as an element of negligence, *see: Young v. Anaconda American Brass Co.* (1969), 43 Wis. 2d 36, 168 N. W. 2d 112; *Presser v. Siesel Construction Co.* (1963), 19 Wis. 2d 54, 119 N. W. 2d 405; *Burmek v. Miller Brewing Co.* (1961), 12 Wis. 2d 405, 414, 107 N. W. 2d 583.

jury that a violation of the code did not constitute negligence and that the code was to be considered in assisting it in determining what the reasonable standard was for dismantling the scaffolding. Although under the *Lovesee Case* it would have been proper for the trial court to refuse such an instruction, we think that since the court carefully limited the use to which the jury could put the administrative code, its admission was not so prejudicial as to require a new trial. One would think that ordinary common sense would dictate that when one removes scaffolding he would not leave planks and lumber sticking to the ceiling whether the lumber belongs to him or someone else.

Although an orthopedic surgeon had not examined Bourassa for some five years, his deposition was read into evidence. He had treated Bourassa following the fall and for some four months thereafter. His prognosis at that time was Bourassa had suffered at least a five percent disability and he stated Bourassa's lower back and hip would never return to normal and that strenuous twisting or bending would always cause pain.

Gateway argues such testimony could not be a basis for an award for future pain and suffering because of the remoteness in time of the opinion to the trial. We think the doctor's testimony was admissible even though the opinion was five years old, because of the absolute nature of his prognosis that the lower back and hip would never return to normal and there would always be pain. The case of *Rivera v. Wollin* (1966), 30 Wis. 2d 305, 140 N. W. 2d 748, is not contrary to this view. There, the medical opinion nineteen months prior to trial was held to be formed at a time too remote from the trial to be a basis for an award of future pain and suffering. But the doctor's opinion was to the effect the plaintiff would have pain for an indefinite period of time until the healing was complete.

To support an assessment of damages for permanent disability, the evidence must show a continued disability is reasonably certain to result from the complained-of injury. *Boelter v. Ross Lumber Co.* (1899), 103 Wis. 324, 79 N. W. 243; *Kowalke v. Farmers Mut. Automobile Ins. Co.* (1958), 3 Wis. 2d 389, 406, 88 N. W. 2d 747. And in respect to future pain and suffering, an award must be based on medical testimony and not solely on subjective testimony of the injured party where the injury is subjective in character and of such a nature that a layman cannot with reasonable certainty know whether or not there will be future pain and suffering. *Diemel v. Weirich* (1953), 264 Wis. 265, 58 N. W. 2d 651. The objection of Gateway to the orthopedic surgeon's testimony goes to the weight the jury should give it rather than to its admissibility.

Gateway also claims it was error to admit testimony to establish the propriety of the use of ropes and barricades at the scene of the accident. The evidence related to the placing of danger signs, when the erection or stripping of forms was being performed, at ground level to protect workmen from falling timbers or pans. This evidence did not have much materiality to establish a duty on the part of the defendant to use ropes or barricades at the place of the accident. However, we do not find it was prejudicial error to admit the evidence. The jury was not misled by this immaterial evidence. There was no testimony it was customary in the trade to put warning signs or barricades in the area where the accident happened, and the jury reasonably could not imply a duty from the evidence.

Gateway argues the award of $40,000 for loss of earning capacity is erroneous and the result of speculation, although not excessive. We find no merit in this argument. The proper test for loss of future earnings is loss of capacity to earn irrespective of availability of future employment or whether or not the employee chooses to

exercise this capacity. *Ballard v. Lumbermens Mut. Casualty Co.* (1967), 33 Wis. 2d 601, 608, 148 N. W. 2d 65; *Carlson v. Drews of Hales Corners, Inc.* (1970), 48 Wis. 2d 408, 417, 180 N. W. 2d 546. The testimony was conflicting and the jury chose to believe that Bourassa was no longer capable of performing as a construction-labor foreman and since it obviously believed Bourassa's injuries to be permanent, the award of $40,000 for loss of earning capacity for a period of 32.7 years (the life expectancy of Bourassa) is supported by the evidence. Gateway cannot complain that no instruction was given on the present value of a yearly future loss because it did not ask for such an instruction and absent a request, it cannot claim the court's failure to give the instruction was error. *Walker v. Baker* (1961), 13 Wis. 2d 637, 650, 109 N. W. 2d 499. Gateway cites cases for comparative awards for similar disabilities. At best, these are general guidelines and are not controlling. This court does not compare verdicts of different juries at different periods of time, under various economic conditions. The most this court can do is to try to harmonize such verdicts into a reasonable range in light of all the factors. The discrepancy of a particular verdict must be so great that the amount falls outside the limits of the range if the verdict is to be held not to be supported by the evidence.

While it is true the jury's verdict seems to indicate Bourassa received the benefit of the doubt in the comparison of negligence and in the amount of loss of earning capacity, the findings are supported by sufficient credible evidence and are not against the great weight and clear preponderance of the evidence. None of the errors complained of nor their totality is so prejudicial as to warrant this court's granting a new trial in the interest of justice under sec. 251.09, Stats.

*By the Court.*—Judgment affirmed.