466 A.2d 1349

Joan G. THOMPSON, Administratrix of the Estate of
Raymond D. Thompson, Deceased

v.

CITY OF PHILADELPHIA and William Smith and Srein
Furniture Carriers, Inc. (Five Cases)

Appeal of William SMITH and Srein Furniture Carriers,
Inc. (Three Cases)

Joan G. THOMPSON, Administratrix of the Estate of
Raymond D. Thompson, Deceased

v.

William SMITH and Srein Furniture Carriers,
Inc., Appellants.

Joan G. THOMPSON, Administratrix of the Estate of
Raymond D. Thompson, Deceased

v.

COMMONWEALTH of Pennsylvania. (Four Cases)

Appeal of SREIN FURNITURE CARRIERS, INC., and
William Smith.

Appeal of CITY OF PHILADELPHIA. (Six Cases)

Joan G. THOMPSON, Administratrix of the Estate of
Raymond D. Thompson, Deceased

v.

William SMITH and Srein Furniture Carriers, Inc.
(Three Cases)

Appeal of COMMONWEALTH of Pennsylvania. (Two Cases)

Joan G. THOMPSON, Administratrix of the Estate of
Raymond D. Thompson, Deceased

v.

COMMONWEALTH of Pennsylvania, Appellant.

Joan G. THOMPSON, Administratrix of the Estate of
Raymond D. Thompson, Deceased

v.

William SMITH and Srein Furniture Carriers,
Inc., Appellant.

Superior Court of Pennsylvania.

Argued May 12, 1982.
Filed Sept. 2, 1983.
Reargument Denied Nov. 14, 1983.
Petition for Allowance of Appeal Granted Feb. 23 & 27, 1984.

126

Michael W. Bolechowski, Deputy Attorney General, Philadelphia, for Commonwealth, appellant (at Nos. 2656, 2654

and 2655) and for Commonwealth, appellee (at Nos. 2298, 2301, 2653 and 2659) and for Commonwealth, participating party (at Nos. 2296, 2297, 2299, 2300, 2651, 2652, 2657 and 2658).

Sandra Mazer Moss, Assistant City Solicitor, Philadelphia, for City of Phila., appellant (at Nos. 2299, 2300, 2301, 2651, 2652 and 2653) and for appellee (at Nos. 2296, 2654 and 2657) and for participating party (at Nos. 2656, 2297, 2298, 2655, 2658 and 2659).

James M. Marsh, Philadelphia, for appellant (at Nos. 2296, 2297 and 2298) and for appellee (at Nos. 2299, 2300, 2651 and 2652) and for participating parties (at Nos. 2301, 2653).

Before CIRILLO, MONTEMURO and HOFFMAN, JJ.

HOFFMAN, Judge:

In these appeals from an order granting a new trial solely on the issue of comparative negligence, the parties challenge this court's jurisdiction, the mootness of the appeal, the lower court's jury instructions, and the propriety of a grant of a new trial. We find that the appeal is properly before us, and that only the grant of a new trial was error. Accordingly, we reverse and enter judgment upon the jury's verdict.

On September 28, 1976, William Smith, an employee of Srein Furniture Carriers [Srein], drove his tractor-trailer through a guardrail at the end of the Spring Garden Street exit ramp and plunged onto the westbound lane of the Schuylkill Expressway, crushing the decedent's vehicle. Plaintiff, decedent's wife, sued Smith, Srein, the City of Philadelphia, and the Commonwealth in separate actions, alleging Smith's negligence in driving, Srein's vicarious liability, and the City's and Commonwealth's negligence in marking and maintaining their respective portions of the Expressway and exit ramp. Early during the consolidated trial Smith and Srein [hereinafter Smith] settled with the plaintiff for $400,000, but retained a right of contribution

from the other defendants according to the jury's apportionment of liability. Following trial, the jury awarded damages totalling $500,000,[1] apportioning negligence 30% to Smith, 35% to the City, and 35% to the Commonwealth. Between the verdict and rulings on post-trial motions, the City and Commonwealth settled with the plaintiff for $32,-500 each. In post-trial motions, the City and Commonwealth requested judgment n.o.v., or a new trial, remittitur, and molding of the verdict. Smith opposed and suggested the motions were moot because all defendants had settled with the plaintiff. The lower court denied Smith's request and granted a new trial solely on the issue of comparative negligence. All defendants then appealed to Commonwealth Court and the City and Smith also appealed to this Court. The Commonwealth Court transferred its appeals to this Court. In response to the Commonwealth's motion that we quash and re-transfer the appeals, we directed the parties to brief the question of jurisdiction.

■■■■ The Commonwealth contends that this case should be transferred to the Commonwealth Court. We disagree. Although the Commonwealth Court generally has jurisdiction over civil actions pertaining to the Commonwealth, 42 Pa.C.S.A. § 762, both intermediate appellate courts may, on their own or a party's motion, "transfer any appeal to the other court for consideration and decision with any matter pending in such other court involving the same or related questions of fact, law or discretion." *Id.* § 705. Factors influencing the decision to transfer include: whether the case has already been transferred; whether it involves novel or well-settled questions; whether conflicting lines of authority might develop; and whether transfer would conserve judicial resources. *Commonwealth v. 84 Quart Bottles of Bianco DiVerona Wine,* 250 Pa.Superior Ct. 544, 378 A.2d 1282 (1977). *Valley Forge Industries, Inc. v.*

1. Of the $500,000, $400,000 was for the survival action, $100,000 for wrongful death. Upon finding the Commonwealth had not been timely sued for wrongful death, the lower court vacated the Commonwealth's portion of the $100,000 verdict, reducing the total of damages to $465,000.

*Armand Construction, Inc.,* 248 Pa.Superior Ct. 53, 374 A.2d 1312 (1977). Here, the case has already been transferred once, with attendant delay. Although the question of a grant of a new trial on the issue of comparative negligence is novel in Pennsylvania, the underlying principles of tort law are well-settled and traditionally within this Court's province. The appeal presents no issues requiring the Commonwealth Court's special expertise. Moreover, two of the parties, Smith and the City, are undeniably within this Court's jurisdiction. Accordingly, we retain jurisdiction of this appeal.

■ Smith contends that the City and Commonwealth's appellate issues are mooted by the settlements with the plaintiff. Although all defendants have settled with the plaintiff, they dispute the apportionment of liability among themselves. The jury's apportionment of negligence, as adjudicated in this appeal, will govern the defendants' percentage of liability in their contribution actions against each other. 42 Pa.C.S.A. § 7102; *Slaughter v. Pennsylvania X-Ray Corp.,* 638 F.2d 639 (3d Cir.1981). To allow the apportionment to stand without reviewing whether the record supports it could substantially prejudice the City and Commonwealth. Moreover, neither affirmance nor reversal of the lower court order would force the plaintiff to relitigate her claims, and thus this appeal does not violate the integrity of the settlements. We therefore address the merits.

■ The City and Commonwealth argue that the lower court should have granted their motions for judgment n.o.v. because the evidence was insufficient in law to support the verdict. We disagree. In reviewing a trial court's denial of a motion for judgment n.o.v., the evidence, and all reasonable inferences, must be viewed in the light most favorable to the verdict-winner. *Miller v. Checker Yellow Cab Co.,* 465 Pa. 82, 348 A.2d 128 (1975); *Yandrich v. Radic,* 291 Pa.Superior Ct. 75, 435 A.2d 226 (1981). So viewed, the evidence establishes that the Commonwealth was responsible for the expressway and exit ramp, and the City, by

contract with the Commonwealth, for the T-intersection at the ramp's end. Smith testified that, while driving his tractor-trailer toward the airport, he saw a sign reading "Airport-South Jersey, Keep Right." He did that, moved from the right lane to the center lane as a courtesy to another driver, then moved back to the right lane, traveled a short distance, and found himself driving up the exit ramp. He testified he saw no indication that this ramp led to an abrupt T-intersection. He realized the peril only at the last moment and, in attempting a left turn, he hit and broke through the guardrail, then plummeted off the bridge and onto decedent's vehicle. He testified he was confused by the Commonwealth's "Keep Right" signs and never saw the City's stop signs, and he was travelling 40–45 miles per hour. Other testimony detailed the design of the roadway and signs, and expert testimony indicated safer alternatives. Thus, whether the City and Commonwealth were liable along with Smith was a jury question, and judgment n.o.v. was properly denied.

■ The City contends that the lower court erred in denying its request for binding instructions that it had no duty to construct guardrails to withstand the impact of a negligently driven vehicle. We disagree. For the proposition that no duty exists, the City cites two cases, decided before the advent of comparative negligence, denying recovery to plaintiffs who negligently drove through guardrails. *Ault v. Pennsylvania Railroad Co.*, 381 Pa. 496, 113 A.2d 150 (1955); *Yocum v. Town of Bloomsburg*, 289 Pa. 512, 137 A. 668 (1927).[2] When these cases were decided contributory negligence principles barred recovery if the plaintiff's negligence, however slight, proximately contributed to the accident. *McCay v. Philadelphia Electric Co.*, 447 Pa. 490,

---

**2.** Development in the state of the art has also eroded the precedent established in *Yocum v. Town of Bloomsburg, supra.* When that case was decided in the nineteen-twenties, evidence indicated that even the strongest guardrails available could not have withstood the impact of an automobile. At trial here, however, evidence indicated that several states use a guardrail that could have prevented the tractor-trailer from falling off the bridge.

291 A.2d 759 (1972); *Bohner v. Eastern Express, Inc.*, 405 Pa. 463, 175 A.2d 864 (1961). Under comparative negligence, the plaintiff is barred only if his causal negligence is greater than that of all the defendants combined. 42 Pa.C. S.A. § 7102. Here, nothing indicates any negligence by the plaintiff. Nor can we say as a matter of law that Smith's negligence in driving was greater than that of the City and Commonwealth in maintaining their respective portions of the roadway. Accordingly, the binding instruction was properly refused.

█ The City contends next that even if it were negligent in using guardrails and signs, it is not liable because Smith's negligent driving was a superseding cause. This contention lacks merit. Under Restatement (Second) of Torts, § 447,

> An intervening negligent act will not be a superseding cause relieving the original actor from liability *if* that actor at the time of his negligent act *should have realized* that another person's negligence might cause harm; or, if a *reasonable man* would not regard the occurrence of the intervening negligence as *highly extraordinary;* or, if the intervening act is not *extraordinarily negligent.* What the original actor should have realized and what a reasonable man would say was highly extraordinary are, of course, fact questions which must in the majority of cases be left to the jury.

*Estate of Flickinger v. Ritsky,* 452 Pa. 69, 75, 305 A.2d 40, 43 (1973) (original emphasis). Here, whether the City could have reasonably foreseen negligent operation of a tractor-trailer was a fact question for the jury. Evidence indicated the expressway was heavily travelled and that the City was aware of a more effective guardrail currently used in other states that could have prevented Smith's vehicle from falling off the bridge. The record supports a jury conclusion that the accident causing decedent's death was reasonably foreseeable, and thus we cannot rule as a matter of law that Smith's driving was a superseding cause. Accordingly,

the lower court did not abuse its discretion in denying the City's and Commonwealth's motions for judgment n.o.v.

■■■ The City contends next that the lower court should have reduced its percentage of the verdict rather than ordering a new trial. This contention lacks merit. If a court holds a verdict against the weight of the evidence, the proper procedure is to set aside the verdict and grant a new trial. *Interstate Creamery, Inc. v. Reinerth,* 212 Pa.Superior Ct. 335, 243 A.2d 451 (1968). A verdict should be molded only when the jury's intention is clear. *Kardibin v. Associated Hardware,* 284 Pa.Superior Ct. 586, 426 A.2d 649 (1981); *May v. Pittsburgh Railways Co.,* 209 Pa.Superior Ct. 126, 224 A.2d 770 (1966). Here, the record does not indicate the precise facts the jury relied upon in determining the percentages of liability. To alter the percentages, the court would have had to assume facts not apparent from the verdict, and thus its refusal to reduce the City's portion of negligence was not an abuse of discretion. *Richards v. Dravo Corp.,* 249 Pa.Superior Ct. 47, 375 A.2d 750 (1977).

■■■ Finally, Smith contends the lower court erred in awarding a new trial on the issue of apportionment of negligence. We agree, finding that the record adequately supports the verdict allocating responsibility nearly equally among the three defendants. A court's decision to grant a new trial because it finds the verdict against the weight of the evidence will be reversed only for an abuse of discretion. *Yandrich v. Radic, supra.* An abuse of discretion, being more than a mere error of judgment, occurs if the court's conclusion overrides or misapplies the law, is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will as shown by evidence on the record. *Mielcuszny v. Rosol,* 317 Pa. 91, 176 A. 236 (1934). Nothing suggests the lower court here acted out of bias, but the court's order exceeds the limited standards for the grant of a new trial because of the weight of the evidence, and thus misapplies the law.

"The grant of a new trial is proper only when the jury's verdict is so contrary to the weight of the evidence as to shock one's sense of justice and make a new trial imperative in order that right may be given another opportunity to prevail." *Yandrich v. Radic, supra,* 291 Pa.Superior Ct. at 79, 435 A.2d at 228. A court abuses its discretion if it grants a new trial merely because the court or some other jury would have arrived at a different result. *Hummel v. Womeldorf,* 426 Pa. 460, 233 A.2d 215 (1967). Rather, there must be evidentiary circumstances or incontrovertible facts of such weight as to convince the court that an injustice has been done. *Mapp v. Wombucker,* 421 Pa. 383, 219 A.2d 681 (1966). "Where the case is close and the evidence contradictory, the jury must perforce be given freer rein." *Austin v. Ridge,* 435 Pa. 1, 6, 255 A.2d 123, 125 (1969).

These same narrow standards for new trial apply in reviewing a jury's apportionment of negligence under the Comparative Negligence Act. 42 Pa.C.S.A. § 7102. Wisconsin, under a statute similar to Pennsylvania's,[3] noted that to upset a jury's apportionment of negligence is a most "unusual" judicial act, *Caldwell v. Piggly-Wiggly Madison Co.,* 32 Wis.2d 447, 145 N.W.2d 745 (1966), and has declared that the jury's apportionment should be sustained "if there is any credible evidence which under any reasonable view supports the jury's findings." *Bourassa v. Gateway Erectors, Inc.,* 54 Wis.2d 176, 179, 194 N.W.2d 602, 604 (1972). *Accord Martin v. Bussert,* 292 Minn. 29, 193 N.W.2d 134 (1971). The facts of these comparative-negligence cases similarly support the jury's verdict here. *Caldwell v. Piggly-Wiggly Madison Co., supra,* concerned apportioning liability between a store-owner and a repairman. Both had breached virtually identical duties of leaving a dangerous

**3.** *Compare* 42 Pa.C.S.A. § 7102 *with* Wis.Stat.Ann. § 895.045. *See* 1 Pa.Leg.J. 1707 (Senate 1976) (legislative history with Sen. Hager remarking that the "Bill comes almost exclusively from the Wisconsin statute. ... It has worked very well in Wisconsin and it is my understanding and my hope that in Pennsylvania it will work the same way.") *See also* Symposium, Comparative Negligence in Pennsylvania, 24 Villanova L.Rev. 453 (1979).

mechanical doorway unattended and unguarded. The store-owner had only constructive knowledge of the danger. The jury, however, despite the virtually identical duties and without evidentiary support, found the store-owner three times more negligent. Here, by contrast, the jury compared different duties—creating a dangerous condition of land versus negligent operation of a vehicle—thus making the interplay and balancing of facts more sensitive, and arrived at a more balanced result—the three defendants were nearly equally liable, with the landowners combined twice as liable as the driver. In such a case, the court should be reluctant to hold that the jury's apportionment was arbitrary rather than a reflection of its evaluation of the weight and credibility of the conflicting testimony.

The precedents comparing negligence between landowners and others support such deference. In *Warshany v. Supermarkets General Corp.*, 161 N.J.Super. 515, 391 A.2d 1271 (1978), the court remanded for a new trial because it found a jury's award of 50% negligence against the landowner who created a dangerous condition to be too low. Here the lower court found a verdict of combined 70% negligence against the landowners to be too high. Although each case depends on its unique facts, such conflicting results would suggest oversupervision of the jury in contravention of our established standards. *See Bourrassa v. Gateway Erectors, Inc., supra* (upholding jury verdict of 83% negligence against contractor creating unsupported platform).

Here, the jury's allocation of 30% causal negligence against the truck driver, Smith, was reasonable. Unlike the jury in *Austin v. Ridge, supra*, which attempted to assess liability against a non-party employer of a truckdriver by holding the driver involved in an accident 0% negligent, thus shocking the judicial conscience and requiring a new trial, the jury here found the driver negligent and substantially liable. Although Smith failed to correctly interpret traffic signs and road conditions, the record shows this error occurred on an unfamiliar, fast-moving, badly-signed high-

way whose condition, attributable to the other defendants, compounded the consequences of his driving error. Smith heeded the "Airport-Keep Right" signs that, because of the configuration of the lanes and other signs, led him onto the exit ramp. He was certainly negligent in overlooking the exit signs at the bottom of the ramp and the stop signs at the top. However, the roadway design afforded only 340 yards before an abrupt T-turn. The evidence shows Smith was not completely inattentive because he attempted to negotiate the turn and managed to move his truck 18 feet to the left. Unfortunately, his tire struck the curb, and the guardrail failed to restrain his vehicle, which plunged to the roadway below, causing the fatal accident. The jury's finding Smith 30% negligent, and thus liable for $150,000 of the damages, hardly excuses his driving, and is eminently reasonable in light of the negligence of the other defendants.

For instance, the City of Philadelphia, having responsibility for the T-intersection, could have avoided the fatal consequences, according to expert testimony, simply by using a guard rail design as was used elsewhere on the expressway and at similar intersections in other states. Testimony also indicated that a 12″ curb was an appropriate and available safety measure for such turns that could have reduced the risk of a turning vehicle jumping the rail. Moreover, other expert testimony stated that more prominent signing should have been used at this abrupt turn near high-speed traffic. A double-arrow warning sign or flashing lights was suggested to be visible from a greater distance than the ordinary stop signs and more effective in redirecting even an inattentive driver. The record shows Smith did eventually react, and thus that the lack of such warning could be considered a substantial factor in causing the accident. Just as this record supports the jury's finding of liability against the City for its failure to take any of these readily available and relatively inexpensive precautions to protect against the foreseeable possibility of a negligent driver, Restatement (Second) of Torts, § 447, it also supports the

jury's allocation of 35% of the total causal negligence to the City. We should thus uphold this portion of the verdict.

Finally, the record supports the allocation of liability to the Commonwealth for the overall design of this exit and the misleading signing of the highway. The detailed testimony about the signs' location and content supports Smith's allegation and the jury's finding that the signs directing through-traffic to the airport led Smith onto the exit ramp. An early sign indicated airport traffic should keep right. A later sign before this right-side exit running parallel to traffic said "Airport-Keep Right." No sign warned that the extreme right lane was for exiting traffic only. A prominent sign near the base of the exit said "Spring Garden Street" without saying "exit" or otherwise indicating that Spring Garden Street did not lead to the airport. These signs all preceded a very short exit from a high-speed road that ended in the abrupt T-intersection. Thus, although two signs at the base of the ramp indicated the exit, the jury could reasonably conclude that the Commonwealth's signs were negligently inadequate. A driver following the signs could be led to the base of the exit ramp at highway speeds, and if he missed the two signs at the base, would have no warning until it was too late. It is neither shocking to the judicial conscience nor patently unreasonable that a sign system and road design so vulnerable to a momentary lapse of attention could be found 35% liable for this accident. Accordingly, we reverse the lower court's award of a new trial and enter judgment upon the jury's allocation of liability. Jurisdiction is not retained.

Reversed.

MONTEMURO, J., files a concurring and dissenting opinion.

MONTEMURO, Judge, concurring and dissenting:

I dissent from the majority's reversal of the trial court's award of a new trial on the issue of comparative negligence but join in the remainder of its opinion. Following a detailed review of the entire record of this case, it is my

opinion that a finding of 70% negligence on the part of the City and Commonwealth was unreasonably excessive and grossly against the weight of the evidence. Consequently, I would hold that the trial court did not abuse its discretion in awarding a new trial solely on the issue of comparative negligence.

The record of this case sets forth incontrovertible facts and circumstances of such weight that I am convinced that an injustice has been done. It is clear from the record that, for no apparent reason, Smith, the truck driver, failed to see two large signs that directed traffic, exiting at Spring Garden Street, to bear right. There was undisputed evidence that a speed limit sign that read "Exit, 25 miles per hour" was located at the bottom of the ramp, which Smith also failed to observe. The record further indicates that two thirty inch "STOP" signs were placed at the end of the exit ramp—one on the right side and one on the left side—which Smith, again, testified that he did not see. All signs were boldly printed and in good condition. Despite these warnings, Smith proceeded up the ramp at a speed of 40 to 45 miles per hour, and, while neglecting to apply his brakes, attempted to negotiate a left turn. In doing so, his right tire blew out and his tractor-trailer plunged over the bridge, killing the decedent.

The fact that Smith may have been lost or confused does not excuse his failure to comply with traffic regulations. He had a duty to operate his tractor-trailer in a manner which did not endanger any person or property, 75 Pa.C.S.A. § 3714; to operate his vehicle within the posted speed limit, 75 Pa.C.S.A. § 3361; and to bring his vehicle to a complete stop where official "STOP" signs had been erected, 75 Pa.C.S.A. § 3323.

The majority attempts to distinguish the facts of this case from those in *Caldwell v. Piggly-Wiggly Madison Co.,* 32 Wis.2d 447, 145 N.W.2d 745 (1966) and *Warshany v. Supermarkets General Corporation,* 161 N.J.Super. 515, 391 A.2d 1271 (1978). The majority indicates that in *Caldwell,* the duties of each defendant involved were virtually identi-

cal as opposed to the instant case wherein the duties of Smith were different from those of the City and the Commonwealth. Similarly, the majority distinguishes *Warshany* on the ground that in that case the court determined that the jury's award of 50% negligence against a landowner was too low, whereas, in the case *sub judice*, the trial court determined that the jury's award of 70% negligence on the part of the City and Commonwealth was too high. I do not perceive these factual differences as crucial to the determination of whether the jury's verdict in *this* case was grossly against the weight of the evidence and, consequently, whether a new trial should be granted on the issue of comparative negligence. Each case depends on its unique facts and the facts of this case indicate that Smith was so flagrantly negligent in the handling of his vehicle that a finding of merely 30% liability on his part shocks my conscience.

I would affirm the order of the trial court granting a new trial on the issue of comparative negligence.