## Dreisbach v. Taylor Tract, Inc.

S. *Curtis Seifert,* for plaintiff.
*Allen A. Pechter, Jr.,* for defendant.

BIESTER, *J.,* September 1, 1982—This case was heard before the undersigned trial judge sitting without a jury. We make the following findings of facts and conclusions of law

## FINDINGS OF FACT

1. Plaintiffs, Ronald A. Dreisbach and Judy A. Dreisbach are individuals residing at Snowball Gate, Levittown, Bucks County, Pa.

2. Defendant, Taylor Tract, Inc. is a Pennsylvania Corporation engaged in real estate development at Fallsington, Bucks County, Pa.

3. Plaintiffs entered into a written agreement of sale with Taylor Tract, Inc. for the purchase of a house and lot of land in a development known as Village of Nottingham in Fallsington, Bucks County, Pa.

4. The agreement of sale included a purchase price of $64,900.

5. Plaintiffs paid $6,450 with two checks as down payment.

6. Plaintiffs ordered various "extras" to be built into the house with a value of $4,490.

7. Plaintiffs paid $3,175 as partial payment for these "extras."

8. Plaintiffs received a commitment for a mortgage from East Girard Savings which included a mortgage emergency provision at nine and three quarters percent.

9. As the house was not completed by April 5, 1979, the original closing date, an extension was granted and accepted.

10. During the period of construction, water seepage occurred with some accumulation in the basement of the house.

11. A problem of water seepage is not uncommon in new construction and is usually a result of the settling of the earth adjacent to the house.

12. Defendant placed a sump pump in the basement to alleviate the problem.

13. The sump pump worked continuously and effectively when it was able to run during the period in question.

14. During this time, water continually seeped into the basement.

15. There was no damage to the premises save for the discoloration of the walls.

16. Some time during the five days previous to the day of final settlement, May 4, 1979; plaintiff entered the house and turned the sump pump off, causing water accumulation in the basement on the day of settlement.

17. On May 4, 1979 defendant tendered the house in question as provided in the agreement of sale.

18. After approximately four weeks, during which plaintiffs could have reconsidered, defendant placed the house on the market.

19. Sale of the house was completed on February 13, 1981.

20. During the period between May 2, 1979 and February 13, 1981 defendant expended $16,455.12

on loans and $4,245.38 on maintenance of the house.

## CONCLUSIONS OF LAW

1. Plaintiffs and defendant entered into a valid agreement of sale for premises at 8 Nottingham Court, Fallsington, Bucks County, Pa.

2. On May 4, 1979, defendant had completed construction of the house and was prepared to deliver good and marketable title.

3. The recurring presence of ground water did not render the premises uninhabitable, unmarketable, or justify plaintiffs rejection. Nor did it so distinguish the subject premises from the sample house as to render it other than substantially similar to the sample house shown to plaintiffs.

4. Plaintiffs' failure to complete settlement resulted in the forfeiture of all sums paid on account.

5. Pursuant to the appropriate provision of the contract the damges of defendant are limited to the sums already paid to the defendant in the nature of liquidated damages.

For the foregoing reasons we enter the following

## DECREE NISI

And now, this September 1, 1982, it is adjudicated and decreed that plaintiffs' relief is denied and defendant's relief is granted in part and denied in part.

Plaintiffs breached their contract and defendant is entitled to retain the monies paid by plaintiffs on account, $10,225.

The damages of defendant are, pursuant to the contract of sale, only liquidated damages equal to the sum paid on account by plaintiffs. Relief prayed for by defendant in excess of this amount is denied.

If exceptions are not filed within ten days, the decree nisi shall upon praecipe, be entered as a final decree.

BIESTER, *J.*, April 12, 1984—

## MEMORANDUM OPINION
## SUR POST-TRIAL MOTIONS

This case arises from a written agreement entered into by plaintiffs and defendant to build plaintiffs a home in a development known as Village of Nottingham in Fallsington, Bucks County, Pa. Plaintiffs and defendant agreed that the cost of the house would be $64,900 and that defendant would add certain extra features to the house for an additional $4,490. Plaintiffs paid defendant a total of $10,225 on these accounts.

While the construction was going on, plaintiffs complained of water that was seeping into the basement. While the construction progressed, defendant installed a sump pump to remove the water. While it was running the sump pump was totally effective in preventing any accumulation of water. Plaintiffs alleged at settlement on May 4, 1979, that there was then water in the basement, and based on that allegation they rejected the tendered house and brought this action in equity. Defendant subsequently brought a counter claim against plaintiffs based on the rejection of the property.

The trial judge found in his finding of fact no. 16 that there was water accumulation in the basement on the day of settlement. That finding, however, was erroneous. A review of the transcript of the testimony indicates that Leonard B. Sokolove, then attorney-at-law, now judge of the court of common pleas, who represented defendants as seller at settlement was present at the attempted settlement of

the subject premises. When the settlement failed, he went to subject premises about two hours after the time of settlement and found that the basement was dry, "it was damp, but dry". The Sokolove testimony is as follows:

"Q. Now, you say until after settlement. Did you have occasion to visit the house after settlement?

A. Because there was such a long discussion, I became very curious, left the settlement office and went to the house directly from the Chelsea Title Company to see for myself what the problem was.

Q. Did you inspect the cellar that time?

A. I went into the house from Chelsea Title; and my recollection is that there obviously had been some dampness, that you could see, on the walls of the basement, some lines — and I could not tell you at this time the height of those lines. It would be pure guesswork, but there had been some lines of where water had been; but as far as I was concerned, the basement at that time, which was probably an hour — at least an hour or perhaps two hours after the time of settlement, the basement was dry. It was damp, but dry."

The case was heard before the undersigned sitting without a jury. The court filed findings of fact and conclusions of law on September 1, 1982 reflecting undisputed facts and determining certain disputed issues of fact and law. Upon evaluating the proffered testimony and the witnesses, the trial judge, as fact finder, concluded that the problem of water seeping was neither considerable nor unusual and that the tendered house conformed to and met defendant's obligations under the parties' contract. The problem was simply not a material failure of performance. The court further concluded that plaintiffs had gone to the subject premises and deliberately turned off the sump pump a few days be-

fore settlement. Plaintiffs filed post-trial motions which were denied by this panel of judges (excluding, of course, Judge Sokolove) after oral argument. From that decision plaintiffs now appeal.

Plaintiffs raise six points on appeal. They are that the trial judge and the panel of judges failed to (1) accept plaintiffs' proposed findings of fact, (2) conclude that the water seepage was a breach of the contract, (3) conclude that the house and the sample house were substantially different so as to make their house non-conforming, (4) conclude that the presence of water was a material breach of the contract, (5) conclude that defendant offered non-conforming premises at settlement, and (6) find that plaintiffs were entitled to a return of their monies on account and for additional damages.

Points one, three, four and five refer essentially to factual determinations reserved to the fact finder. The second is perhaps a mixed question of law and fact but the issue's determination depends on the findings of fact with respect to the extent and management of the water problem. As the resolution of the issues raised by these points depends essentially upon factual rather than legal determinations they can be overturned only if "the verdict was capricious or was against the weight of the evidence and resulted in a miscarriage of justice." Bohner v. Eastern Express, Inc., 405 Pa. 463, 175 A.2d 874 (1961).

In light of those statements it is clear to us that these contentions have no merit. Defendant presented ample evidence on each one of these points so that a reasonable fact finder could come to the conclusion that the trial judge did. The transcript reveals that the factual determinations in this case were judgments of the relative credibility of the expert and lay testimony offered by the witnesses

placed on the witness stand by both sides. In each instance the defense made a record which fully supports the findings of the trial judge's order of September 1, 1982. The trial judge listened to the testimony of the builder, the next door homeowner who lived in a similar house, plaintiffs and other witnesses. His findings flow from his evaluation of their testimony and of them as witnesses. As there was a solid evidentiary basis for each one of these findings we cannot overturn the decision.

Points 2 and 4 both concern whether the water seepage and standing water in the basement amounted to a breach of contract. On these points the uncontroverted testimony of Mr. Eric Morterud, the general manager of Taylor Tract, Inc. was very instructive. Mr. Morterud has more than 20 years in the building trades, and has overseen the construction of thousands of homes. He testified that water seepage was a normal problem in the building of new homes and that the use of a sump pump was a normal way of preventing or removing this accumulated water. He added that the installation of a sump pump was a requirement of the township in which this house is located. During the examination, Mr. Morterud also declared that a condition such as this normally corrected itself over time. He concluded his testimony by stating that the only permanent damage to the basement was some discoloration of the walls, a flaw that can be fully cured by painting the walls.

Mr. Morterud's testimony as to the alleviation of the water seepage problem confirmed the earlier testimony of Mr. Nicholas Sherlock. Mr. Sherlock bought the subject property from Taylor Tract, Inc. after the Dreisbachs rejected the tender of the property. He testified that the sump pump had worked on only one occasion from March 1981, the date of

purchase until December, 1981, the time of trial. He elaborated, "I had no water like what you people are talking about, but dampness I have had."

From this testimony, which was not contradicted by any other testimony, we believe that a reasonable fact finder could conclude that the problem of the leaky basement was not so great as to make the subject house substantially different from the model house of the subdivision, particularly in light of the fact that the standard method of correcting the problem proved effective. As the water seepage was well controlled by the customary method, there was no real or substantial difference between the sample house and the subject premises. It was therefore not a breach of contract to tender the house in this condition on the date of settlement, and it was plaintiffs who committed the breach, not defendant. We do not dispute the finding that the damages in this action are limited to those expressly enumerated in the terms of the contract. To substitute another measure of damages for the one used by the trial judge, would ignore both the contract and the findings of fact. Therefore we denied the post-trial motions.